[Civ. No. 31786. First Dist., Div. Four. June 1, 1973.]

VINCENT C. KAYLOR, Plaintiff and Appellant, v.
DEPARTMENT OF HUMAN RESOURCES DEVELOPMENT et al.,
Defendants and Respondents.

**COUNSEL**

Stephen F. Von Till and Jerald H. Wilhelm for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, and David J. Bowie, Deputy Attorney General, for Defendants and Respondents.

## OPINION

**DEVINE, P. J.**—Appellant, having been discharged from his job with Pacific States Steel Corporation and having been denied unemployment insurance by the Unemployment Insurance Appeals Board (hereafter "the Board"), sought a writ of mandate to compel an order for payment. The writ was denied. He appeals.

Kaylor was cited for driving a motor vehicle without an operator's license. It was discovered that a bench warrant had been issued for his arrest for failure to appear in court on another traffic violation. After trial, he was sentenced to pay a fine of $120 or to serve seven days in jail. Although he had some earned wages and asked his supervisor to provide him with funds for bail or to pay the fine, he was, unsuccessful. He was unable to pay the fine. So he spent the seven days in jail. Once his jail term had started, the referee found, he was not allowed to telephone. The company knew where he was, so that the provision in the contract allowing termination of employment upon three days unreported absence is unavailable.[1]

The decisions of the referee and of the Board denying benefits were based on Unemployment Insurance Code section 1256.1, which reads, in pertinent part: "(a) If the employment of an individual is terminated due to his absence from work for a period in excess of 24 hours because of his incarceration and he is convicted of the offense for which he was incarcerated or of any lesser included offense, he shall be deemed to have left his work voluntarily without good cause for the purposes of Section 1256."[2]

But serving of the sentence could have been avoided under the ruling of *In re Antazo,* 3 Cal.3d 100, 115 [89 Cal.Rptr. 255, 473 P.2d 999]. Compulsion to serve a sentence which is imposed only in lieu of the primary penalty, a fine, which cannot be paid because of the indigence of the defendant constitutes an invidious discrimination in violation of the equal protection clause of the Fourteenth Amendment. Respondents argue that appellant brought the imprisonment on himself, not just because

---

[1]As the referee noted, there was evidence that appellant's work record was unsatisfactory and that the employer seized the opportunity to terminate his employment. But the basis of the termination was the involuntary absence.

[2]The referee's findings, adopted by the Board, are: "The record in this matter however shows that the claimant while given the option of being incarcerated or paying the fine [for failure to appear on a traffic violation] had no real alternative inasmuch as he had no funds and no way of getting any money. . . . It is true that the claimant was not required to spend time in jail except by reason of his lack of funds."

he could not pay the fine, but because he committed the original offense, wherefore his absence was not "due to" his impecuniousness only, but also to his failure to obey the law. But this was so with *Antazo*, too. He had committed the crime of arson; his imprisonment would have been avoidable if he had not broken the law. His incarceration would have been avoidable, however, if he had been able to pay the fine and a penalty assessment. We see no distinction, so far as invidious discrimination between the affluent and the impoverished is concerned, between the incarceration itself and the denial of the unemployment compensation provided by law, resulting from the incarceration. Both were acts of agencies of the state.[3]

But it is argued by respondents that the only proper way to invoke the *Antazo* rule is that of habeas corpus or by petition for writ of mandate against the rendering court. There is cited the rule announced in *Thomas* v. *Department of Motor Vehicles,* 3 Cal.3d 335, 337-339 [90 Cal.Rptr. 586, 475 P.2d 858], that an administrative department is not empowered to make a judicial decision which would invalidate a conviction, and that attack in the rendering court is the proper procedure. But in the *Thomas* case, the administrative agency, the Department of Motor Vehicles, was required to suspend Thomas' driving privilege because of his two convictions of drunk driving (one of which Thomas contended was invalid because of lack of counsel). The agency had but one course to follow. It could not annul the court's sentence, and it had to act against the license.

A distinction from the *Thomas* case was noted in *DeRasmo* v. *Smith,* 15 Cal.App.3d 601, 607-610 [93 Cal.Rptr. 289], in a case wherein there was discretion in the agency to rule on matters of fact and of law. Where a judgment of conviction does not produce a mandatory ruling against a party in an administrative proceeding, the administrative agency need not attempt to do that which is beyond its powers but, the conviction or sentence remaining, may render its own decision. ■ In the present case, the administrative agency could not declare the sentence unconstitutional (*Williams* v. *Department of Motor Vehicles,* 2 Cal.App.3d 949, 953-954 [83 Cal.Rptr. 76]; *Laisne* v. *Cal. St. Bd. of Optometry,* 19 Cal.2d 831, 834-835 [123 P.2d 457]), but it did have jurisdiction to hold, as appellant had urged it to do, that section 1256.1 of the Unemployment Insurance Code is to be construed to refer only to "incarceration" in cases wherein

[3]The fact that the employer's account is charged does not alter the nature of unemployment insurance as an activity of the State of California. (*Syrek* v. *California Unemployment Insurance Appeals Board,* 54 Cal.2d 519, 532 [7 Cal.Rptr. 97, 354 P.2d 625]; *McCrae* v. *California Unemployment Ins. Appeals Bd.,* 30 Cal.App.3d 89, 94 [106 Cal.Rptr. 159].)

outright imprisonment was imposed, and not to those in which the confinement was but a substitute for a fine which could not be paid because of the employee's lack of funds, thus rendering a parallel ruling to that of *Antazo.*

Although appellant's brief to the Board made reference to denial of equal protection of the laws in violation of the Constitutions of the United States and of the State of California, thus raising a point which may have been beyond the jurisdiction of the Board, it also addressed itself to the lesser propositions, which were within the jurisdiction of the Board, that to make a decision which would "operate onerously against those for whose benefits the statute exists" would be contrary to the policy of the code as declared in section 100 thereof,[4] and that a severe construction of section 1256.1 would present "the ludicrous proposition that a rich man could retain his job or his eligibility for unemployment compensation, whereas the poor man not only loses his job, but he is denied unemployment benefits." The Board having jurisdiction so to decide, and the indigency of appellant having been found by the referee and the Board as the sole reason for his having to spend time in jail, it was an abuse of its discretion (by analogy of the case to *Antazo*) to deny the unemployment benefits. ■ The provisions of the Unemployment Insurance Code must be liberally construed to further the legislative objective of reducing the hardship of unemployment. (*Gibson* v. *Unemployment Ins. Appeals Bd.,* 9 Cal.3d 494 [108 Cal.Rptr. 1, 509 P.2d 945]; *California Emp. Com.* v. *Kovacevich,* 27 Cal.2d 546, 549 [165 P.2d 917]; *Flores* v. *Unemployment Ins. Appeals Bd.,* 30 Cal.App.3d 681, 684 [106 Cal.Rptr. 543]; *Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board,* 178 Cal.App.2d 263, 270 [3 Cal.Rptr. 37].)

The inability to pay the fine was as surely ascertainable by the referee and the Board as it would have been by a judge had appellant gone through the double procedure of applying to the rendering court for writ of habeas corpus (if, indeed, that were of any use), and then applying to the Board. To proceed by the administrative process is more compatible with the civil aspects of the case. Moreover, this is not a case in which there was asserted a defect in the judicial process reachable only by appeal or habeas corpus,

---

[4]Unemployment Insurance Code, section 100, reads, in part: "The Legislature therefore declares that in its considered judgment the public good and the general welfare of the citizens of the State require the enactment of this measure under the police power of the State, for the compulsory setting aside of funds to be used for a system of unemployment insurance providing benefits for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum."

as was the case of *Thomas* v. *Department of Motor Vehicles, supra,* 3 Cal.3d 335, wherein the validity of the conviction was challenged on the ground that the accused did not have counsel. In the case before us, the court's sentence remains undisturbed. It was fully executed and satisfied by the incarceration. But the substitution of time for unavailable money produced the collateral result of the loss of employment. If there had been a hearing by the sentencing judge on the matter of indigency, and he had decided on substantial evidence that the plaintiff was not indigent, no doubt the incarceration not only would have been valid (*People* v. *Lewis,* 19 Cal.App.3d 1019 [97 Cal.Rptr. 419]), but also it would properly be considered voluntary absence from the job. But the only evidence about the judge's activity following the sentence is the testimony of Kaylor that the judge allowed him one phone call to see if he could pick up his pay to discharge the fine. (Kaylor also testified that he sent a man to pick up his check, which would have been enough to cover the fine, but the employer declined to hand it to him. It was explained that his pay day had not yet come although he had earned the wages.)

The judgment denying the petition for writ of mandate is reversed, with directions to the trial court to grant a writ of mandate directing the Board to set aside its order and to allow appellant's claim in the appropriate amount. The trial court will allow appellant costs of trial and of appeal.

Bray, J.,* and Good, J.,† concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 25, 1973.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

†Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.