Mozelle Goudy, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs October 17, 1984, to Judges ROGERS and CRAIG, and Senior Judge BARBIERI, sitting as a panel of three.

*Kenneth R. Alford,* for petitioner.

*Richard F. Faux,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Counsel, for respondent.

OPINION BY JUDGE ROGERS, December 14, 1984:

Mozelle Goudy, an unemployment compensation claimant, has filed a petition for review of an order of the Unemployment Compensation Board of Review (board), affirming a referee's decision that the petitioner was ineligible for benefits because his unemployment was by reason of his own fault. The authority cited by the referee and the board for the decision was Section 3 of the Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §752.

Section 3, 43 P.S. §752, which we reproduce in the margin,[1] has been held to provide an independent substantive ground for the disqualification of workers for benefits. *See Lybarger Unemployment Compensation Case*, 418 Pa. 471, 211 A.2d 463 (1965); *Unemployment Compensation Board of Review v. Ostrander*, 21 Pa. Commonwealth Ct. 583, 347 A.2d 351 (1975).

The claimant was employed as a truck driver. His last day of work was February 15, 1982. On his application for unemployment compensation benefits, the claimant reported to the Office of Employment Security (OES) that because he had been charged on December 26, 1981 with several motor vehicle violations, including driving while under the influence of intoxicants, his employer suggested that he take a

---

[1] Section 3 is as follows:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

leave of absence until his problems were resolved. He also reported that he was under the impression that he would be able to return to work, if he were found not guilty of the charges. We observe at this point that the December 26, 1982 incident was not connected with the claimant's work.

The claimant's employer reported to OES that the claimant was discharged because he had lost his chauffeur's license and had been driving illegally without having informed the employer.

OES concluded that the claimant's unemployment was "for reasons which are considered willful misconduct in connection with his work because he lost his driver's license due to a violation and was unable to drive a truck," citing Section 402(e), 43 P.S. §802 (e), which declares that persons discharged from work for willful misconduct connected with their work are ineligible for benefits.

At the referee's hearing of the claimant's appeal, the claimant testified that on February 15, 1982, his employer suggested that he take a leave of absence to take care of the charges arising out of the December, 1981 incident and that he agreed. The claimant also testified that although his license had been suspended it was restored before February 15, 1982 when he was put on leave; that he was eventually found not guilty of the December, 1981 drunk driving charge sometime after February 15, 1982; that he told his employer he was available for work; and that his employer said no work was available.

A witness for the employer testified that on February 15, 1982, the claimant had been unable to produce a copy of his chauffeur's license, that the claimant had admitted to the suspension of his license, and that "he was discharged as a result of his unavailability for work." The witness further testified that

"the details of the court case and his attempt to prove his innocence [regarding the driving violations that occurred in December, 1981] necessitated his being laid off."

Records of the Department of Transportation, Bureau of Traffic Safety Operations, introduced into evidence, showed that the claimant's license, which had been suspended on November 18, 1981 for failure to pay a fine was restored on January 13, 1982. It is clear therefore that the claimant had a chauffeur's license on February 15, 1982, his last day of work. Nevertheless, the referee decided that the claimant was ineligible for benefits under Section 3 because he did not have a valid driver's license on February 15, 1982.

On the claimant's further appeal, the Unemployment Compensation Board of Review remanded the case for additional testimony. At the second hearing, the claimant again testified that he did not lose his license as a result of the accident. He further testified that when he met with his employer on February 15, 1982, his employer did not tell him that he was a bad employee or that he was fired, but informed him that he should take a leave of absence until he "beat the [drunk driving] case." Finally, the claimant reiterated that he had a license on February 15, 1982.

The board affirmed the referee's decision that the claimant was ineligible for benefits based on Section 3 but on different findings, as follows:

2. The claimant had (due to previous citations) his driver's license suspended but such was restored on January 13, 1982.

3. In December of 1981, the claimant was arrested by police authorities and charged with operating a motor vehicle under the influence of intoxicants, public drunkenness, failure to

stop at a stop sign, and reckless driving. These charges, although before the restoration of his license, were not the cause of his original loss of license.

4. When the employer learned of the claimant's latest violation, he was discharged.

5. In April, 1982, in the Court of Common Pleas of Mercer County, the claimant was found not guilty of operating a motor vehicle under the influence of intoxicants but was found guilty of public drunkenness, failure to stop at a stop sign, and reckless driving.

In discussion, the board stated that the "claimant became unemployed for a series of motor vehicle charges. Thus, he cannot be deemed to be unemployed through no fault of his own and must be denied benefits under Section 3 of the Law." We disagree with this rationale and reverse the board's order.

In *Penn Hills School District v. Unemployment Compensation Board of Review,* 496 Pa. 620, 437 A.2d 1213 (1981), the Supreme Court held that "an unemployed worker can be denied benefits only by *explicit* language in the Act which clearly and plainly excludes the worker from its coverage." 496 Pa. at 625, 437 A.2d at 1215 (emphasis in original). Thus, the initial decision issued by OES denying benefits under Section 402(e) was clearly erroneous since the claimant's conduct with respect to his driving violations while off duty was not willful misconduct "connected with his work" as Section 401(e) provides.

The board's order denying benefits pursuant to the Section 3 "through no fault of their own" language extends the application of Section 3 as a basis for disqualification beyond its accepted or acceptable purpose. Section 3 has been employed in certain

quite narrowly defined circumstances. There are the cases of the professional driver who loses his license to drive and with it his employment. *Strokes v. Unemployment Compensation Board of Review,* 29 Pa. Commonwealth Ct. 584, 372 A.2d 485 (1977); *Unemployment Compensation Board of Review v. Ostrander,* 21 Pa. Commonwealth Ct. 583, 347 A.2d 351 (1975). Section 3 has also been applied to disqualify workers who cannot report to their places of employment because they are confined to prison. *Smith v. Unemployment Compensation Board of Review,* 29 Pa. Commonwealth Ct. 292, 370 A.2d 822 (1977), *aff'd per curiam,* 487 Pa. 448, 409 A.2d 854 (1980). The references in Section 3 to the ''crushing force [of unemployment] upon the unemployed worker'' and ''reserves . . . as compensation for loss of wages by employes'' have provided the basis for the disqualification of owners of failed businesses. *Starinieri Unemployment Compensation Case,* 447 Pa. 256, 289 A.2d 726 (1972); *Chaiken v. Unemployment Compensation Board of Review,* 12 Pa. Commonwealth Ct. 534, 317 A.2d 345 (1974). Benefits have been denied, based on Section 3, to a person who drank excessively, failed to report to work for a week, and was then discharged. *Mooney v. Unemployment Compensation Board of Review,* 39 Pa. Commonwealth Ct. 404, 395 A.2d 675 (1978), *aff'd per curiam,* 487 Pa. 448, 409 A.2d 854 (1980); *see also Katz v. Unemployment Compensation Board of Review,* 40 Pa. Commonwealth Ct. 1, 396 A.2d 480 (1979), *aff'd per curiam,* 487 Pa. 448, 409 A.2d 854 (1980).

The only category in which this case could fall is the one first mentioned—that of the professional driver who has lost his license. But the claimant had the license when he was discharged. We have found no authority for the proposition that Section 3 re-

quires the disqualification of a worker discharged for conduct which might in the future cause him to be unqualified to do the job, as the board holds in this case. The charges lodged against the claimant in December, 1981 not only had no connection with his employment, they had no effect on his license to drive on February 15, 1982, or, as it happened, thereafter.

Order reversed.

### ORDER

AND Now, this 14th day of December, 1984, the order of the Unemployment Compensation Board of Review in the above-captioned matter is reversed.