YARDVILLE SUPPLY COMPANY, APPELLANT, v. BOARD OF REVIEW, DEPARTMENT OF LABOR, AND ERNEST SPARKS, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted January 12, 1988—Decided January 26, 1988.

---

[12]*See* Memorandum from Chief Justice Wilentz to assignment judges (Feb. 11, 1986) (concerning the issuance of in-house restraining orders), reprinted at Supreme Court Family Division Practice Committee, Annual Report (1986–1987).

[13]Plaintiff's request for exclusive possession of the residence, given the circumstances, could represent a request for her share of the parties' joint venture. See *Kozlowski v. Kozlowski,* 80 *N.J.* 378, 383 (1979). As noted in Justice Pashman's concurring opinion in that case, the fact that the parties were unmarried does not prevent the courts from having to determine the intent of the parties concerning the financial result of a dissolution of such a relationship. *Id.* at 390. *See also N.J.S.A.* 9:17–53. If paternity is adjudicated, the father may be ordered to pay for the reasonable expenses of the mother's pregnancy and postpartum disability as well as for child support.

Before Judges PRESSLER, BILDER and MUIR, JR.

*Charles J. Casale,* Jr., attorney for appellant (*Louis J. De-Mille,* on the brief).

*W. Cary Edwards,* Attorney General of New Jersey, attorney for respondent Board of Review (*James J. Ciancia,* Assistant Attorney General, of counsel; *Michael J. Haas,* Deputy Attorney General, on the brief).

No brief was filed by respondent Ernest Sparks.

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

This is an unemployment compensation appeal. Claimant Ernest Sparks, a truck driver, lost his job when his driving license was suspended for six months following his conviction of a non-job-related charge of driving while intoxicated. The Board of Review affirmed the determination of the Appeal Tribunal, which held that claimant's termination was neither a disqualifying voluntary quit within the intendment of *N.J.S.A.* 43:21–5(a) nor attributable to disqualifying misconduct within the intendment of *N.J.S.A.* 43:21–5(b). The employer, Yardville Supply Company, appeals. We affirm.

The facts are not in essential dispute. Claimant had been employed by Yardville as a tractor-trailer driver for approximately two years prior to the suspension of his driving privileges and his immediately ensuing termination. He had promptly advised Yardville of the charge of driving while intoxicated which had been made against him about a year before the actual suspension of his license. He was then told that if the suspension came to pass, an effort would be made to assign him to non-driving duties. He had in fact worked as a yard man on occasion. When the suspension was imposed, however, claimant was told that no other work was available for him, and he was let go.

Respondent's appeal is based both on *N.J.S.A.* 43:21–5(a), which disqualifies employees who have "left work voluntarily without good cause attributable to such work," and *N.J.S.A.* 43:21–5(b), which provides a six-week disqualification for employees who have "been suspended or discharged for misconduct connected with the work." The Appeal Tribunal concluded that neither section applied. As to *N.J.S.A.* 43:21–5(a), it found that since the motor vehicle infraction resulting in the loss of prerequisite driving privileges occurred during non-working hours, the employee's commission of the infraction did not evince an intention to quit voluntarily and was not equatable with an actual voluntary quit. As to *N.J.S.A.* 43:21–5(b), the

Appeal Tribunal, in accordance with prior judicial interpretation, defined misconduct as used by the statute to mean "a willful disregard of employer policy or actions not in the best interest of the employer." *See Demech v. Board of Review,* 167 *N.J.Super.* 35, 38–39 (App.Div.1979); *Beaunit Mills v. Division of Employment Security,* 43 *N.J.Super.* 172, 183 (App.Div.1956), certif. den. 23 *N.J.* 579 (1957). It then concluded that the evidence before it failed to "indicate that the claimant's actions were in willful violation of employer policy." The Board of Review concurred, as do we.

Our consideration of appellant's contentions respecting claimant's disqualification is guided by well-settled principles, all of which conduce towards affirmance of the administrative action here appealed from. First, the Unemployment Compensation Law is remedial social legislation requiring liberal construction in order to accomplish its beneficent purpose of "further[ing] the welfare of the people by affording protection against the shocks and rigors of unemployment." *Provident Inst. for Sav. in Jersey City v. Div. of Employ. Sec.,* 32 *N.J.* 585, 590 (1960). Second, the interpretation of the statute by the agency charged with its implementation and enforcement is, so long as it is reasonable, ordinarily entitled to judicial deference. *See, e.g., Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 327 (1984). Finally, the fact-findings of an administrative agency are entitled to deference if supported by adequate evidence in the record as a whole. *Gloucester Cty. Welfare Bd. v. N.J. Civ. Serv. Comm'n,* 93 *N.J.* 384, 391 (1983). We are satisfied that each of these principles applies here.

This jurisdiction has not yet considered in a reported opinion the question of whether an employee's job termination attendant upon the loss of driving privileges disqualifies him from entitlement to unemployment compensation benefits. Other jurisdictions which have addressed the issue in the context of legislation similar to ours have reached different conclusions on a variety of theories.

As to whether the loss of a driver's license resulting from off-duty traffic violations, and more particularly drunk driving, constitutes a voluntary termination, Vermont has held that it does not; Michigan, with a dissent by three justices, has held that it does; and New York has held that it is a question of fact to be determined by the agency. *See,* respectively, *Przekaza v. Dept. of Employment Sec.,* 136 *Vt.* 355, 392 *A.*2d 421 (Sup.Ct.1978); *Echols v. Michigan Employment Security Commission,* 380 *Mich.* 87, 155 *N.W.*2d 824 (Sup.Ct.1968); and *Donahue v. Catherwood,* 33 *A.D.*2d 848, 305 *N.Y.S.*2d 827 (App.Div.1969). The Michigan holding was based upon the majority's perception that the claimant demonstrated insufficient cause to overcome the administrative conclusion that "the loss of a claimant's prerequisites for continued employment, especially through his own negligence, is a voluntary leaving without good cause attributable to the employer." 155 *N.W.*2d at 827. The basis of the Vermont holding was that off-duty drinking and driving does not by itself constitute "evidence that the plaintiff intended to quit his job" but rather that "the revocation of his license made it impossible for him to perform his job as a driver." 392 *A.*2d at 422.

We concur with the position taken by Vermont. It is true that an off-duty traffic infraction which results in loss of license and consequent termination of employment may be found to have been voluntarily committed. But we regard it as contrary to both logic and experience to conclude that voluntary commission of the offense is equatable with a voluntary separation from employment. We note further the consistency of our view with *Means v. Board of Review,* 172 *N.J.Super.* 465 (App. Div.1980), certif. den. 84 *N.J.* 451 (1980), in which we held that a licensed practical nurse who was discharged from her hospital job because she failed to pass the second of two licensing examinations had not voluntarily terminated her employment. As we there concluded, the loss of a license prerequisite for the job does not evince an intention to resign or quit nor does it

constitute a voluntary resignation or termination. 172 *N.J.Super.* at 466.

▮ With respect to the question of whether loss of a prerequisite driver's license constitutes disqualifying misconduct connected to the work, there is agreement among the jurisdictions that if the infraction occurs during the course of the employment and while the claimant is driving for his employer, he is disqualified by this provision. *See, e.g., Nelson v. Hartz Truckline,* 401 *N.W.*2d 436 (Minn.Ct.App.1987); *Department of Industrial Relations v. Rich,* 42 *Ala.App.* 80, 152 *So.*2d 692 (Ct.App.1963). *Cf. Schock v. Bd. of Rev., Div. Empl. Sec.,* 89 *N.J.Super.* 118 (App.Div.1965), aff'd o.b. 48 *N.J.* 121 (1966) (claimant-truck driver found disqualified by reason of misconduct as a result of leaving the company truck unattended with its motor running and going into a tavern for a beer). There is, however, a divergence of views when the infraction occurs during non-working hours in a vehicle other than the employer's. Pennsylvania, Utah and Minnesota have concluded that under these circumstances there is no disqualifying misconduct connected with work. *See Walseth v. L.B. Hartz Wholesale,* 399 *N.W.*2d 207 (Minn.Ct.App.1987); *Schnaare v. Five G's Trucking, Inc.,* 400 *N.W.*2d 762 (Minn.Ct.App.1987); *Huff v. Com., Unemploy. Comp. Bd. of Review,*[1] 40 *Pa.Commw.* 11, 396 *A.*2d 94 (Commw.Ct.1979), aff'd o.b. *sub nom. Smith v. Unemployment Bd.,* 487 *Pa.* 448, 409 *A.*2d 854 (Sup.Ct.1980); *Continental Oil Co. v. Bd. of Review of Indus. Comm.,* 568 *P.*2d 727 (Utah Sup.Ct.1977). Maine and Louisiana have held to the contrary. *See Look v. Maine Unemployment Ins. Com'n,* 502 *A.*2d 1033 (Sup.Jud.Ct.Me.1985); *Grimble v. Brown,* 247 *La.* 376, 171 *So.*2d 653 (Sup.Ct.1965), *cert. den.* 382 *U.S.* 861, 86

---

[1]Although the court in *Huff, supra,* found that off-duty driving while intoxicated did not constitute disqualifying misconduct connected with the work, it nevertheless held claimant to be disqualified by reason of another provision of Pennsylvania law of which there is no New Jersey analog, namely, the withholding of benefits unless employment was terminated "through no fault" of the employee. 396 *A.*2d at 96.

*S.Ct.* 123, 15 *L.Ed.*2d 99 (1965). The Maine and Louisiana decisions are based on the view that an employee who knows his job requires him to drive has acted in wanton disregard of his employer's interests by so conducting himself on his own time as to disqualify himself from continuing his employment. The contrary decisions are based on the view that while the conduct of an employee who drinks and drives on his own time may be culpable, it is nevertheless not necessarily culpability connected with the work and does not necessarily evince "a deliberate, willful, or wanton disregard of his employer's interest." *Continental Oil Co. v. Bd. of Review of Indus. Comm.,* *supra,* 568 *P.*2d at 731.

While we concede that a close judgment call is obviously involved in choosing between these disparate views of misconduct connected with the work, we are persuaded by the more liberal interpretation. Moreover, we are satisfied that the statutory language does not clearly compel either result. In view, therefore, of the remedial nature of the statute, we opt, as have most of the other courts whose decisions we have herein cited, to defer to the agency's interpretation and application of the statutory criterion.

Affirmed.