YARDVILLE SUPPLY COMPANY, APPELLANT, v. BOARD OF REVIEW, DEPARTMENT OF LABOR, RESPONDENT.

Argued November 29, 1988—Decided March 23, 1989.

*Charles J. Casale, Jr.,* argued the cause for appellant (*Charles J. Casale,* attorney; *Louis J. DeMille, Jr.,* on the brief).

*Karen L. Hershey,* Deputy Attorney General, argued the cause for respondent (*Cary Edwards,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

Ernest Sparks, a truck driver, lost his job after his driving privileges were suspended due to his conviction for driving while intoxicated (DWI). He sought and was granted unemployment compensation benefits. We hold that he should have been disqualified from collecting benefits under *N.J.S.A.* 43:21–5(a) because he "left work voluntarily without good cause attributable to such work."

On December 28, 1984, Ernest Sparks was arrested for DWI. His arrest occurred during non-working hours. At the time Sparks was employed by the Yardville Supply Company as a tractor-trailer driver, although on occasion he worked "in the yard". Sparks promptly notified Yardville of the DWI charges pending against him. He was told that an effort would be made to assign him to non-driving duties if his driving privileges were ultimately suspended.

Subsequently, Sparks' driver's license was suspended for a period of six months. Sparks immediately informed Yardville of the suspension and inquired into the possibility of continuing to work at Yardville in a non-driving capacity. He was informed that no other work was available.

Sparks filed a claim for unemployment benefits with the Department of Labor, Division of Unemployment and Disability Insurance. The claim was approved. Yardville appealed, and after a hearing, the Appeals Examiner affirmed the determination of eligibility, finding that Sparks had not "left work voluntarily" under *N.J.S.A.* 43:21-5(a). In addition, he found that Sparks should not be disqualified for "misconduct connected with the work" under *N.J.S.A.* 43:21-5(b)[1]. The Board of Review upheld this decision.

The Appellate Division affirmed the Board's decision in *Yardville v. Board of Review*, 222 *N.J.Super.* 201 (1988). It held that Sparks' loss of employment stemming from the suspension of his driving privileges does not constitute a voluntary quit under *N.J.S.A.* 43:21-5(a). While recognizing that Sparks' off-duty traffic infraction may have been voluntarily committed, the court nevertheless found that it is "contrary to both logic and experience to conclude that voluntary commission of the

---

[1] *N.J.S.A.* 43:21-5(b) provides in relevant part that an individual shall be disqualified for benefits "[f]or the week in which the individual has been suspended or discharged for misconduct connected with the work, and for the five weeks which immediately follow that week (in addition to the waiting period), as determined in each case."

offense is equatable with a voluntary separation from employment." *Id.* at 205. The court also held that Sparks could not be disqualified from receiving benefits for "misconduct connected with the work" under *N.J.S.A.* 43:21–5(b), because his off-duty conduct, while blameworthy, did not evince "a deliberate, willful, or wanton disregard of the employer's interest." *Ibid.* (quoting *Continental Oil Co. v. Board of Review*, 568 *P.*2d 727, 731 (Utah 1977)). We granted Yardville's petition for certification. 111 *N.J.* 583 (1988).

I

New Jersey's Unemployment Compensation Act, *N.J.S.A.* 43:21–1 to –56, (the Act), was enacted in 1936. The public policy behind the Act is to afford protection against the hazards of economic insecurity due to *involuntary* unemployment. *N.J.S.A.* 43:21–2 (emphasis added). *See Krauss v. A. & M. Karagheusian,* 13 *N.J.* 447, 455 (1953); *Schock v. Board of Review, Employment Sec.,* 89 *N.J.Super.* 118, 125 (App.Div. 1965), aff'd, 48 *N.J.* 121 (1966). In order to further its remedial and beneficial purposes, the law is to be construed liberally in favor of allowance of benefits. Nonetheless, it is also important to preserve the fund against claims by those not intended to share in its benefits. The basic policy of the law is advanced as well when benefits are denied in improper cases as when they are allowed in proper cases. *Krauss, supra,* 13 *N.J.* at 455–56; *Schock, supra,* 89 *N.J.Super.* at 125.

Prior to 1961 the Act did not disqualify claimants who "left work voluntarily for good cause" from receiving unemployment benefits, regardless of whether good cause was attributable to work. In 1961, however, the Legislature amended *N.J.S.A.* 43:21–5(a) to provide that an individual shall be disqualified from receiving benefits

(a) For the week in which the individual has *left work voluntarily without good cause attributable to such work,* and for each week thereafter until the individual becomes reemployed and works four weeks in employment, which may include employment for the federal government, and has earned in employ-

ment at least six times the individual's weekly benefit rate, as determined in each case. (emphasis supplied).[2]

The issue here is whether a truck driver whose decision to drink and drive resulted in the loss of his driver's license, a prerequisite to his employment, has left work voluntarily without good cause pursuant to *N.J.S.A.* 43:21–5(a). We hold that he has. Because of his actions, Sparks is no longer able to do the job that he was hired to do. Yardville had no control over Sparks' reckless decision to gamble his driver's license. It would be unfair to make Yardville bear the economic cost of Sparks' misconduct.

Sparks is not the sort of "involuntarily" unemployed worker that the Act is designed to protect. The policy underlying the Act is summed up in *Schock, supra,* 89 *N.J.Super.* at 125, quoting *Battaglia v. Board of Review,* 14 *N.J.Super.* 24, 27 (App.Div.1951):

It is not every case of unemployment which entitles an unemployed person to benefits. The purpose of the act is to provide some income for the worker earning nothing, because he is out of work *through no fault or act of his own,* until he can find employment or for the period stated in the statute, if he continues to be unemployed. (Emphasis added)

*Accord Medwick v. Board of Review,* 69 *N.J.Super.* 338, 340 (App.Div.1961). To allow Sparks to recover would subvert the expressed policy of providing aid to those who are unemployed *"through no fault or act of [their] own "* (emphasis added). *Schock, supra,* 89 *N.J.Super.* at 125.

Our decision is supported by *Self v. Board of Review,* 91 *N.J.* 453 (1982), the leading case to address the issue of what constitutes a voluntary quit under *N.J.S.A.* 43:21–5(a). In *Self* we concluded that a claimant who is no longer able to work due to transportation difficulties has "left work voluntarily without good cause." Moreover, in *Self* we stated that in general an employee is disqualified from receiving unemployment benefits under *N.J.S.A.* 43:21–5(a) if he makes a "departure not attribut-

[2]The 1961 amendment to *N.J.S.A.* 43:21–5(a) added the words "attributable to such work" following "good cause." *L.*1961, *c.* 43, p. 423, § 3.

able to work." *Id.* at 457. The only recognized exception to this rule exists where an employee, unable to work because of illness, nevertheless makes an attempt to protect his or her employment. *Self, supra,* 91 *N.J.* at 457; *DeLorenzo v. Board of Review,* 54 *N.J.* 361, 363 (1969). Sparks, however, does not allege that his inability to work is the result of illness.

If anything, Sparks has a weaker claim for receiving benefits than did the claimants in *Self,* who suddenly and involuntarily found themselves without any means of commuting to work. By contrast, Sparks' unemployment is traceable directly to conduct for which he is responsible: his decision to drink and drive, made despite the knowledge that by risking his driving privileges he was endangering his livelihood as a truck driver.

Inexplicably, neither the dissent nor the Appellate Division cite *Self.* Instead, the Appellate Division relied on *Means v. Board of Review,* 172 *N.J.Super.* 465 (App.Div.), *certif. den.,* 84 *N.J.* 451 (1980), decided prior to *Self.* Such reliance is misplaced. In *Means* the court specifically stated that it is not "apposite" to equate the case of a nurse who is unable to pass a required licensing examination with cases involving "the right of chauffeurs to unemployment benefits after their discharge because of job disqualification due to revocation of driving license [sic] as a result of voluntary and deliberate violations of the traffic laws." *Id.* 172 *N.J.Super.* at 467.

Several out-of-state cases support our holding. *Echols v. Michigan Security Commission,* 380 Mich. 87, 155 *N.W.*2d 824 (1968), in particular, is directly on point. In that case the Michigan Supreme Court held that a taxicab driver who became temporarily unemployed after his driver's license was suspended for ninety days because of traffic violations had "left work voluntarily without cause," and thus was not eligible to receive unemployment benefits. *See also Hine v. Commonwealth of Pennsylvania,* 103 *Pa.Cmwlth.* 267, 520 *A.*2d 102 (1987), (auto mechanic who lost his driver's license, a prerequisite of employment, due to several off-the-job motor vehicle violations, disqualified from receiving benefits); *Corbacio v. Commonwealth*

*of Pennsylvania*, 78 *Pa.Cmwlth.* 70, 466 *A.*2d 1117 (1983) (delivery driver discharged because he lost driver's license for off-the-job speeding violations denied unemployment compensation benefits); *Betancourt v. Ross*, 60 *A.D.*2d 719, 401 *N.Y.S.*2d 8 (1977) (employee who was unable to attend work because he was in jail had "left work voluntarily"); *Donahue v. Catherwood*, 33 *A.D.*2d 848, 305 *N.Y.S.*2d 827 (1969) (taxi driver who lost his driving license because of his refusal to take a blood test for intoxication held to have voluntarily left his employment without good cause). *But see Przekaza v. Department of Employment Sec.*, 136 *Vt.* 355, 392 *A.*2d 421, 422 (1978) (chauffeur whose driver's license, a prerequisite of employment, revoked following his DWI arrest during an off-the-job incident had not "left work voluntarily" because "the record is devoid of any evidence that the plaintiff intended to quit his job").

Where it is reasonably foreseeable that an employee's voluntary conduct will render him unemployable, and his actions actually do lead to the loss of a prerequisite of employment, the employee leaves work voluntarily without good cause attributable to such work under *N.J.S.A.* 43:21–5(a).[3] A driver's license is a prerequisite of employment for those, such as Sparks, who drive for a living. Nevertheless, Sparks jeopardized his license by engaging in a foolish, voluntary act. As such, he cannot claim to be the sort of "involuntarily unemployed" individual that the Unemployment Compensation Act is designed to protect.

II

The Attorney General, representing the Board of Review, concedes that under *Self v. Board of Review, supra,* 91 *N.J.*

---

[3]Yardville contends that if Sparks is not disqualified under *N.J.S.A.* 43:21–5(a), he should at least be disqualified from receiving unemployment benefits for "misconduct connected with the work" for the six-week statutory period provided by *N.J.S.A.* 43:21–5(b). Because we find that Sparks is disqualified pursuant to *N.J.S.A.* 43:21–5(a), we do not reach the issue of whether he is likewise disqualified under *N.J.S.A.* 43:21–5(b).

at 453, a truck driver who loses his driver's license due to an off-duty driving infraction and therefore is no longer able to work has voluntarily quit under *N.J.S.A.* 43:21–5(a). The Attorney General maintains, however, that Sparks should not be disqualified from receiving benefits because his ability to drive a truck was not the "sole" basis for his employment with Yardville. Despite the fact that his driver's license was suspended, the Attorney General argues that Sparks could still perform other duties and meet other conditions of employment.

We agree that Sparks would be entitled to receive unemployment benefits if there exists substantial evidence that he was employed not solely as a truck driver but in other capacities as well. Under such circumstances loss of his driver's license need not have resulted in automatic unemployment.

We are convinced, however, that Yardville employed Sparks solely as a truck driver. Howard Gilbert, an executive vice president at Yardville, testified at the hearing that Sparks' "only" job was as a truck driver. The only evidence in the record that suggests otherwise is a remark at the hearing in which Sparks stated that while employed at Yardville, "I was working in the yard once in a while." At that same hearing, however, Sparks also admitted that when he lost his driver's license, "I was unable to do the job of which I was hired." Moreover, there is no evidence in the record that there was available at Yardville alternative employment that Sparks was capable of performing satisfactorily, at the time that his driver's license was suspended.

Accordingly, we reverse the judgment of the Appellate Division and remand to the Division for entry of an appropriate judgment.

O'HERN, J., dissenting.

The majority's decision to deny unemployment benefits to a truck driver who loses his license due to a driving under the influence violation may undoubtedly be good policy, but in

reaching its result the Court departs from the language of the act and leaves us without an organizing principle for future decisions.

I hold no brief for drunk drivers. But as judges we do not have the power to punish their conduct more than has the Legislature. To say that this driver "quit" work is to say that words mean what we want them to mean. Rather, the Court should state clearly that it has determined in its judgment that this additional penalty should flow from a drunk driving conviction: if you lose your license and your boss fires you, you will receive no unemployment benefits.

As noted, this is undoubtedly a policy to be well received. Drunk driving is an abhorrent social malady. But courts are expected to apply legislative policy, not to enact it. I look first to the declaration of state public policy in our unemployment compensation law, *N.J.S.A.* 43:21-1 to -56. That policy is declared as follows:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. [*N.J.S.A.* 43:21-2]

Not every unemployed worker is entitled to benefits, however. The Legislature has set forth benefit-eligibility conditions, *N.J. S.A.* 43:21-4, and has specifically set forth the statutory disqualifications.

So far as is pertinent, the statute reads:

43:21-5. *Disqualification for benefits*

> An individual shall be disqualified for benefits:

> (a) For the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works four weeks in employment, which may include employment for the federal government, and has earned in employment at least six times the individual's weekly rate, as determined in each case. * * *

> (b) For the week in which the individual has been suspended or discharged for misconduct connected with the work, and for the five weeks which immedi-

ately follow that week (in addition to the waiting period), as determined in each case. * * *

These are generically referred to as the "voluntary quit" and the "misconduct connected with work" provisions. *Broderick v. Board of Review, Div. of Employment Sec.,* 133 *N.J.Super.* 30, 33 (App.Div.1975).

The distinction between (a) and (b), between "voluntary quit" and "misconduct" discharge, is significant. If the "voluntary quit" provisions apply, the claimant is disqualified at least until he has earned at least six times his weekly rate. In effect, this can be an indefinite disqualification if other work is not available. In contrast, under the "misconduct" subsection, no new job requirement is specified, and a worker is disqualified only for the week in which he or she has been discharged and the five weeks immediately following such week (in addition to the waiting period).

In this case, the Court holds that the worker has quit his job. *Ante* at 375. Even the Unemployment Compensation Board would not do that in this case, noting that there was other available work at the plant for this worker. I could understand an agency determination that a truck driver who has lost his license due to such an infraction has so disregarded reasonable requirements of his employment as to conclude that he was terminated for misconduct connected with the work. That is the approach of the Maine Unemployment Commission. *See Look v. Maine Unemployment Ins. Comm'n,* 502 *A.*2d 1033 (Me.1985); *see also Goudy v. Commonwealth, Unemployment Comp. Bd. of Review,* 86 *Pa.Cmwlth.* 435, 485 *A.*2d 848 (1984) (professional driver is ineligible for unemployment insurance when discharged for off-duty violation which only results in loss of driver's license). Claimant was fired. Consequently, the Court should decide this case under section 5(b), which is intended for cases where the employee is discharged. *See Broderick, supra,* (claimant does not voluntarily quit work when the employer discharges the employee for refusal to comply with the employer's reasonable direction).

Although it may be tempting to decide this case against Sparks on the narrow ground that he committed a serious criminal violation, I search for the organizing principle of the majority's opinion. Is it creating a "constructive voluntary quit" doctrine? *See Steinberg v. California Unemployment Ins. Appeals Bd.,* 151 *Cal.Rptr.* 133, 87 *Cal.App.*3d 582 (1978) (outlining the requirements for such a doctrine). How far does the Court's policy go? Is it the voluntariness of the offense? Would speeding that causes a loss of license disqualify a worker from unemployment benefits? Would engaging in a touch football game that causes a driver to break his hand be disqualifying? Or is it the stigmatic nature of the offense? If so, what sort of misconduct outside of work disqualifies one from benefits?

Is it better policy that the worker's family be made to pay indefinitely to advance the enforcement of drunk-driving laws, or is the policy against drunk driving sufficiently advanced by the criminal sanctions without the additional loss of the bread-winner's contribution? These are questions that courts should best leave to the Legislature or the agencies entrusted with their administration.

When courts enact social policy, they lack the informational resources that legislatures have and the ability to balance competing social interests. For example, California's unem-ployment code provides that if employment is terminated due to absence from work because of incarceration, the worker "shall be deemed to have left his work voluntarily without good cause * * *." *Kaylor v. Department of Human Resources,* 108 *Cal.Rptr.* 267, 269, 32 *Cal.App.*3d 732, 734 (1973) (quoting Cal. Unemployment Ins.Code § 1256.1(a)).

Is it not anomalous to observe that if the incident had occurred while Sparks was driving for his employer and had been terminated for that as misconduct under 43:21–5(b), he would have been disqualified for benefits for only five weeks? The greater his relative fault, (*i.e.,* being drunk on the job), the

less his disqualification under the majority's theory. I have no doubt that the Legislature would not want to condone a drunk-driving violation by a truck driver, but I doubt that it would intend such an anomalous result.

In this case, although the Division of Employment Review suggests, in a brief filed in our Court, that such misconduct is a "voluntary quit," it would not apply that disqualification in this case in which it found that there was other available work for the employer. *See Flick v. Review Bd. of Indiana Employment Sec. Div.*, 443 *N.E.*2d 84 (Ind.App.1982) (disqualification for failure to hold a valid driver's license could not be reasonably concluded without a determination of whether there was available work). Hence, I would affirm the judgment of the Appellate Division.

Justice STEIN joins in this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK and GARIBALDI—5.

*For affirmance*—Justices O'HERN and STEIN—2.