778 A.2d 1114 (2001)
343 N.J. Super. 401
Thomas MULLARNEY, Plaintiff-Appellant,
v.
BOARD OF REVIEW, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted July 17, 2001.
Decided August 1, 2001.
*1115 Community Health Law Project, South Orange, attorneys for appellant (Steven M. Leder, of counsel and on the brief, Robert F. Miller, on the brief).
John J. Farmer, Jr., Attorney General of New Jersey, attorney for respondent (Michael J. Haas, Assistant Attorney General, of counsel and JoAnn Fitzpatrick, Deputy Attorney General, on the brief).
Before Judges STERN and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
Claimant, Thomas Mullarney, appeals from a determination of the Board of Review reversing a decision of the Appeal Tribunal that had, in turn, reversed a determination of the Deputy for the Director of the Division of Unemployment Insurance. The effect of the decision of the Board of Review was that Mullarney was ineligible for unemployment compensation benefits because he had left work voluntarily without good cause attributable to the work. N.J.S.A. 43:21-5. In addition, he was required to refund $10,140 in benefits previously paid.
Mullarney was employed as a case manager by Robert Wood Johnson University Hospital in Hamilton Township. That position required a nursing license, which Mullarney possessed. In early 1998, he was suffering from a major depression. On March 26, 1998, Mullarney took a discarded medication patch from a trash can. The patch contained fentanyl, which he knew to be a powerful narcotic. He took the patch home, extracted the narcotic, mixed it with water and injected himself with the resultant solution. He claimed that it was his purpose to commit suicide.
Mullarney lost consciousness. He awoke to find himself surrounded by police and emergency personnel. He was charged with possession of a controlled dangerous substance, and incarcerated in the Middlesex County Jail.[1] After the charges were resolved, Mullarney underwent psychiatric treatment for major depression at Hampton Hospital. During his incarceration and subsequent hospitalization, Mullarney remained in contact with his employer, advising that he would be out of work due to his illness.
Mullarney applied for, and received, state temporary disability benefits until September 9, 1998. The State Board of Nursing (the Board) began an investigation as a result of the attempt to commit *1116 suicide by overdosing on a narcotic. The Board requested Mullarney to voluntarily relinquish his license while the investigation was pending. He claimed that the Board advised him that if he did not surrender his license voluntarily, the Board would compel him to do so. Consequently, during the first week of May, 1998, shortly after his release from the hospital, Mullarney mailed his license to the Board. Shortly thereafter, he received a letter from the hospital, dated April 30, 1998, stating that he would be terminated from his employment, because he no longer qualified for the position since he had voluntarily relinquished his license. On July 2, 1998, the Board suspended his license for two years, effective March 28, 1998.
When Mullarney's temporary disability benefits ended, he thought he had recovered to the point where he could resume working. Indeed, he said his physician advised him that it was safe to do so. Accordingly, unable to find employment, Mullarney applied for unemployment compensation benefits on September 20, 1998, and collected benefits for the weeks ending September 26, 1998, through March 20, 1999.
The Deputy Director determined that Mullarney was disqualified from unemployment benefits effective March 1998 because he "left work voluntarily." The basis of that determination was the fact that his employment required a license as a prerequisite of employment, and that his "[e]mployment ended when [he] lost this license for committing a voluntary act."
The Deputy Director further determined that Mullarney was aware that his actions could jeopardize his license, and, consequently, his separation was considered to be a voluntary quit without good cause attributable to the work, disqualifying him from benefits. N.J.S.A. 43:21-5. Mullarney appealed to the Appeal Tribunal, which reversed, concluding that Mullarney's act of attempting to commit suicide, which resulted from his diagnosed illness of major depression, did not constitute a "voluntary foolish act" barring him from receiving unemployment benefits. A claims supervisor appealed that decision to the Board of Review, which reversed the Appeal Tribunal concluding that Mullarney had taken the drug home to inject it, rather than spontaneously doing so at work, affording him "ample time to reflect on his actions and consider their consequences." The Board further concluded that "[e]ven if it argued that his depressive state clouded his judgment, we are not persuaded that it compelled him to illegally obtain a controlled dangerous substance from his employer, which jeopardized his license and his job." Finally, the Board concluded that Mullarney's voluntary actions resulted in the loss of his license, which was a prerequisite for his employment. The Board determined that not only was Mullarney ineligible for benefits, but was also responsible to refund $10,140 in benefits he received for the weeks ending September 26, 1998 through March 20, 1999.
On this appeal, Mullarney argues, as follows: (1) the Board erred in concluding that Yardville Supply Co. v. Board of Review, 114 N.J. 371, 554 A.2d 1337 (1989) is controlling; (2) the Board erred in holding Mullarney's actions to be voluntary based upon the time delay between taking the drug and attempting suicide, and (3) the Board erred in concluding that Mullarney was responsible for reimbursement.
Our scope of review of the decisions of an administrative agency is quite limited. If the Board's factual determinations are supported by sufficient credible evidence, we must accept them. Brady v. Board of Review, 152 N.J. 197, 210, 704 A.2d 547 (1997). We may not substitute our judgment for that of the agency, even though we may have reached a different *1117 result. Ibid. In addition, we may not disturb the agency's decision unless we conclude that it was arbitrary, capricious, or unreasonable. Ibid. Thus, our scope of review of an agency decision is restricted to the following four inquiries:
(1) Whether the agency's decision offends the State or Federal Constitution;
(2) Whether the agency's action violates express or implied legislative policies;
(3) Whether the record contains substantial evidence to support the findings on which the agency based its actions; and
(4) Whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Id. at 210-11, 704 A.2d 547]
N.J.S.A. 43:21-5 provides as follows:
"An individual shall be disqualified for benefits: For the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works four (4) weeks in employment which may include employment for the federal government and has earned in employment at least six (6) times the individual's weekly benefit rate, as determined in each case."
Our Supreme Court has held that "[w]here it is reasonably foreseeable that an employee's voluntary conduct will render him unemployable, and his actions actually do lead to the loss of a prerequisite of employment, the employee leaves work `voluntarily' without good cause attributable to such work under N.J.S.A. 43:21-5(a)." Yardville Supply Co. v. Board of Review, supra, 114 N.J. at 377, 554 A.2d 1337. In Yardville, the employee, a truck driver, had lost his driver's license after being convicted of driving while intoxicated. Id. at 372, 554 A.2d 1337. The Court held that his unemployment was traceable directly to conduct for which he was responsible, namely, his decision to drink and drive. Id. at 376, 554 A.2d 1337. The Court further held that he made that decision despite the knowledge that by risking his driving privileges, he was endangering his livelihood as a truck driver. Ibid.
Here, the Board could reasonably conclude that Mullarney's decision to take the discarded narcotic patch was also a voluntary act, and it was reasonably foreseeable that the loss of his nursing license could result from his voluntary conduct. We reject his contention that his acts should not be considered voluntary because they were done in the midst of a mental health crisis. It was within the purview of the Board to reject that contention. The Board determined that since Mullarney took the drug home he had ample time to reflect on his actions and consider their consequences. It ultimately concluded that even if Mullarney's depressive state clouded his judgment, it was not persuaded that it compelled him to illegally obtain a controlled dangerous substance from his employer. That inference could reasonably have been drawn from the evidence presented. Thus, given our limited scope of review of the factual determinations of the Board, we accept its conclusion. Consequently, we find that the Board's determination that Mullarney had left work voluntarily without good cause attributable to the work is supported by the record, and we affirm that decision.
Mullarney claims that the taking of the narcotic patch was a product of his mental illness, designed solely to facilitate his efforts to commit suicide, and he did not comprehend that his actions could result in the loss of employment. Thus, he *1118 claims that he did not abandon or leave employment. We reject that contention. To be sure, an employee who is unable to work because of illness and makes an attempt to protect his or her employment is not considered to have left work voluntarily, and is, therefore, entitled to benefits. Yardville Supply Co., supra, 114 N.J. at 375-76, 554 A.2d 1337.
In essence, Mullarney contends that his illness caused him to take the narcotic patch. He claims that the Board's conclusion that there was ample time for him to reflect on his actions and consider their consequences is not supported by record, and also claims that that conclusion is not supported by medical proof present in the record. Mullarney misperceives the burden of proof. An unemployment compensation claimant has the burden of proving an entitlement to benefits. Brady v. Board of Review, 152 N.J. 197, 218, 704 A.2d 547 (1997). Thus, it was Mullarney's burden to prove that he left the job for good cause attributable to the work. Consequently, Mullarney also had the burden of proving his contention that his mental illness so affected his judgment that he was incapable of realizing that the unauthorized taking of the narcotic patch was illegal, could jeopardize his license, and, consequently, his employment. That contention is so esoteric that a fact-finder of common judgment and experience cannot form a valid judgment on the contention without the assistance of expert testimony. State v. Jones, 308 N.J.Super. 174, 185, 705 A.2d 805 (App. Div.), certif. den. 156 N.J. 380, 718 A.2d 1209 (1998). It was Mullarney's burden to supply the requisite expert proof. Suffice it to say the record supports the Board's decision to reject Mullarney's contention that his illness compelled him to illegally obtain the narcotic patch, which ultimately caused the loss of his license and his job.
We next consider Mullarney's contention that the "Department of Labor must waive any recovery of overpayment pursuant to N.J.A.C. 12:17-14.2" because he was "disabled and no longer able to work." N.J.A.C. 12:17-14.2 allows an unemployment compensation claimant to request a full waiver of recovery of an overpayment of benefits if it is demonstrated to the satisfaction of the Director that the claimant did not misrepresent or withhold any material fact in obtaining benefits, and the claimant is deceased or permanently disabled and no longer able to work. The regulation also provides that a claimant's "current receipt of Social Security Disability benefits may be deemed evidence of current permanent disability." N.J.A.C. 12:17-14.2(a)(2).
Apparently, until Mullarney filed his appellate brief he never advised the Division of Unemployment Compensation that on May 29, 1999 he had been awarded Social Security Disability benefits (SSD), retroactive to September 1998. We are troubled by his failure to reveal that fact while his administrative appeals were pending, particularly since he received unemployment compensation benefits for the same period of time he was receiving SSD benefits. At his hearing before the Appeal Tribunal, Mullarney stated, in response to a question from the Appeals Examiner, "that his psychiatrist advised him that he was not able to work and that he had a letter to that effect." In response to the Appeal Examiner's request to supply the letter, Dr. Carlo J. Baril sent a letter to the Appeal Examiner, dated August 10, 1999, opining that Mullarney was "severely depressed, despondent, unable to function." Baril also noted that he had recommended that Mullarney "apply for [SSD]." Thus, the Department of Labor was on notice that Mullarney might apply for SSD.
*1119 We recognize that there is support for the Board's implicit rejection of Mullarney's present claim that he is permanently disabled. Indeed, Mullarney testified before the Appeal Tribunal that he had sufficiently recovered from his depression after the exhaustion of his temporary disability benefits and was able to seek employment at that time. We further acknowledge that N.J.A.C. 12:17-14.2(a)(1) disallows a waiver of recovery of an overpayment of benefits if the claimant misrepresented or withheld "any material fact in obtaining benefits." As previously noted, we are troubled by Mullarney's failure to state that he was receiving SSD benefits. Nevertheless, he appears to be disabled, and, even though the letter was sent to the Appeal Examiner, and presumably considered by the Division before ordering reimbursement, we believe the question of a waiver of recovery should be decided in the first instance, by the Division, applying its expertise. In addition, we prefer to have the benefit of a full record, to be developed on remand for any further review. Of course, if it so desires the Division is entitled to require Mullarney to submit to an impartial physical examination by a physician of its choosing. N.J.A.C. 12:17-14.2(a)(2).
Affirmed in part, and remanded to the Division of Unemployment Compensation for consideration of Mullarney's contention that the claim for reimbursement of benefits should be waived. We do not retain jurisdiction.
NOTES
[1] It is unclear whether he was released on April 2, 1998 or April 7, 1998. In addition, the disposition of the criminal charges is unclear.