60 A.3d 818

APOGEE TRUCKING, L.L.C., APPELLANT, v. BOARD
OF REVIEW, DEPARTMENT OF LABOR AND
LESTER V. BECKLES, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted October 17, 2012—Decided February 28, 2013.

Before Judges FUENTES, ASHRAFI and HAYDEN.

*Earp Cohn P.C.*, attorneys for appellant (*Carol Schuler Harding*, on the brief).

*Jeffrey S. Chiesa*, Attorney General, attorney for respondent (*Lewis A. Scheindlin*, Assistant Attorney General, of counsel; *Alan C. Stephens*, Deputy Attorney General, on the brief).

Respondent Lester V. Beckles has not filed a brief.

The opinion of the court was delivered by

ASHRAFI, J.A.D.

This appeal concerns unemployment benefits awarded to Lester Beckles, a truck driver formerly employed by appellant Apogee Trucking, L.L.C., who was discharged because his poor driving record made him uninsurable. Apogee contends Beckles should

be deemed to have voluntarily left his employment and therefore ineligible to collect unemployment compensation.

Although the employer's contention is fairly debatable under analogous case and regulatory law, we do not find sufficient ground on this record to reverse the final decision of the Department of Labor, Division of Unemployment and Disability Insurance, allowing Beckles to receive unemployment compensation. We affirm.

We will reverse an administrative agency's decision only if it is contrary to law or arbitrary, capricious, or unreasonable. *Brady v. Bd. of Rev.*, 152 *N.J.* 197, 210–11, 704 *A.*2d 547 (1997). We also accord substantial deference to an administrative agency's interpretation of a statute or regulation it is charged with enforcing. *Bd. of Educ. of Neptune v. Neptune Twp. Educ. Ass'n,* 144 *N.J.* 16, 31, 675 *A.*2d 611 (1996). Here, the agency determined that Beckles did not cause his own unemployment and was not disqualified by statute from receiving benefits.

Apogee hired Beckles in April 2008 to drive a truck for purposes of picking up and delivering items donated for distribution to charitable organizations. At the time Beckles was hired, his driving record included two accidents, five citations, and six resulting "points." Apogee knew about the driving record but decided to employ Beckles.

Beckles worked for Apogee from April 23 through November 17, 2008. During that period, he was involved in three minor motor vehicle accidents, only one of which was his fault.[1] In addition, in June 2008, his driver's license was suspended because he did not

---

[1] On May 24, 2008, a driver backed into Beckles's private car while it was parked in his church parking lot. On October 1, 2008, a vehicle rear-ended the truck Beckles was driving for Apogee. On October 28, 2008, Beckles backed an Apogee truck into a basketball hoop in a private driveway. According to Beckles, Apogee compelled him to pay the property owner $500 out of his own pocket as reimbursement for the damage he caused to the basketball hoop. No insurance claim was made, and the October 28, 2008 incident did not appear on Beckles's driving record.

make a timely payment of a surcharge imposed for past traffic violations, but his license was reinstated four days later when he paid the surcharge. Apogee did not terminate Beckles because of any of the driving incidents that occurred in the months after he began working. Rather, Apogee terminated him because it learned that he would no longer be covered by the liability insurance policy provided for Apogee's drivers.

On November 17, 2008, Apogee received a letter from Ryder Transportation Services, the company that provided the trucks used in Apogee's operations and also the insurance coverage for the truck drivers. Ryder's letter stated it would not insure Beckles and he could not drive its trucks because of his driving record. The letter referred to three violations and two accidents in the previous thirty-six months. Apogee terminated Beckles the same day because it could not allow an uninsured driver to drive its trucks.

Beckles applied for unemployment benefits. Administrative proceedings before the Department of Labor resulted in two reversals of internal decisions about Beckles's eligibility for full benefits. Ultimately, on August 25, 2010, the Department's Board of Review affirmed the decision of an Appeal Tribunal that Beckles had not been terminated for misconduct and was therefore eligible to receive unemployment benefits.

On appeal, Apogee has abandoned its prior argument that Beckles's poor driving was "misconduct" under *N.J.S.A.* 43:21–5(b) that justified his termination and made him ineligible for full benefits. Apogee's general manager testified at two telephonic hearings that the employer knew Beckles had a problematic driving record before hiring him and that the several incidents during his period of employment were not the reason for his termination. The Appeal Tribunal concluded reasonably that the misconduct provision of *N.J.S.A.* 43:21–5(b) did not disqualify Beckles from receiving unemployment benefits.

Apogee now argues that Beckles's claim is analogous to and controlled by *Yardville Supply Co. v. Board of Review*, 114 *N.J.*

371, 554 A.2d 1337 (1989), a case in which unemployment benefits were denied. In *Yardville*, a truck driver's license was suspended for six months because he was convicted of driving while intoxicated during non-work time. *Id.* at 373, 554 A.2d 1337. The Court held that "a truck driver whose decision to drink and drive resulted in the loss of his driver's license, a prerequisite to his employment, has left work voluntarily without good cause pursuant to *N.J.S.A.* 43:21–5(a)." *Yardville, supra,* 114 *N.J.* at 375, 554 A.2d 1337. Under *N.J.S.A.* 43:21–5(a), a claimant who "left work voluntarily without good cause" is not eligible to receive unemployment benefits until the claimant has re-established a work record.

The Court in *Yardville* reasoned that the driver was "no longer able to do the job that he was hired to do," that the employer "had no control" over the driver's "reckless decision" to drink and drive, and that the employer should not "bear the economic cost" of the driver's loss of his license. *Yardville, supra,* 114 *N.J.* at 375, 554 A.2d 1337. The Court stated: "Where it is reasonably foreseeable that an employee's voluntary conduct will render him unemployable, and his actions actually do lead to the loss of a prerequisite of employment, the employee leaves work voluntarily without good cause attributable to such work." *Id.* at 377, 554 A.2d 1337.

The holding of *Yardville* was adopted by the Department as a regulation limiting eligibility for unemployment benefits. *N.J.A.C.* 12:17–9.10 states in relevant part:

Loss of license needed as a condition of employment

(a) If an individual is discharged due to the loss of a prerequisite license which is necessary to perform the duties of his or her employment, such discharge shall subject the individual to disqualification for benefits for voluntarily leaving work if he or she engaged in an act which resulted in the loss of the license.

Apogee contends that Beckles's uninsurability should be treated the same as the loss of a driver's license, and therefore, he is disqualified from receiving unemployment benefits as if he left his job voluntarily.

Apogee's contention might be more persuasive in a different case. Here, Apogee hired Beckles with knowledge that he had a

poor driving record. He was insured for almost seven months despite that record. Ryder apparently conducted a random review of Beckles's driving record and determined that it would no longer provide insurance coverage for him. The accidents and violations cited by Ryder in its notification letter were either ones that pre-dated Beckles's hiring in April 2008 or incidents that did not result from his voluntary conduct. That is to say, Beckles's conduct after the date of his hire was not the specific reason for his uninsurability. Just as Apogee had no control over providing insurance coverage for Beckles, Beckles himself could not have prevented Ryder's decision to suspend his insurance coverage. He already had the three citations that Ryder referenced, and the two accidents noted in Ryder's letter either occurred before the date of his hire or were not his fault.

The Board of Review concluded that Beckles's driving was not misconduct that caused his termination. We now conclude that his driving during the period of his employment was also not the same kind of "reckless decision" that resulted in the loss of driving privileges in *Yardville.* Any driving incidents that occurred after Beckles was hired and that were noted by Ryder were not his voluntary conduct that caused the loss of his insurability and hence his job.

The Board of Review's decision that Beckles did not voluntarily leave his employment was not arbitrary, capricious, or unreasonable or contrary to law.

Affirmed.