236 N.J. Super. 523 (1989)
566 A.2d 543
THE COUNTY OF MONMOUTH, PLAINTIFF-APPELLANT,
v.
DEPARTMENT OF CORRECTIONS, STATE OF NEW JERSEY, WILLIAM H. FAUVER, COMMISSIONER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 1, 1989.
Decided November 16, 1989.
*524 Before Judges KING, SHEBELL and BAIME.
Malcolm V. Carton, Monmouth County Counsel, attorney for appellant (Robert B. Thaler, Special County Counsel, on the brief).
Peter N. Perretti, Jr., Attorney General, attorney for respondent (John C. Turi, Deputy Attorney General, on the letter brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
The County of Monmouth (County) appeals to this court from the action of the Department of Corrections (DOC), State of New Jersey, and its Commissioner, William H. Fauver, in maintaining juveniles in county detention centers sentenced to State institutions and in refusing the County's demand for their immediate transfer to State facilities. On August 25, 1989, the County moved before this court for immediate emergent relief requesting an order that the DOC, through its Commissioner, move State-sentenced juvenile offenders from the County's Youth Detention Center in those instances where the court had determined that incarceration in a State facility was an appropriate disposition for the juvenile. The Commissioner and the DOC concede the jurisdiction of this court to review the policy in question. See R. 2:2-3(a)(2).
The County maintains the Youth Detention Center having a maximum population capacity of 39 residents, as established by the DOC under N.J.A.C. 10A:32-4.2. The record reveals that *525 during 1989 the population at that facility has gone as high as 64 residents. When plaintiff made its application to this court, there were approximately 59 youths at the facility, including 13 who had received State-imposed sentences of incarceration. These 13 juveniles were awaiting transfer to State-operated facilities. According to the superintendent of the County's Youth Detention Center, the average post-disposition stay was 40 days.
The DOC explains in its brief to this court that "[t]he problems experienced by the appellant as a result of overcrowding in its detention center are not unique. Other counties operate under identical, or worse, conditions." It is the position of the DOC that the resources available to it for placement of incarcerated juveniles are limited and that it is a policy determination made by the agency as to whether and for how long a sentenced youth will remain in the county detention center, even where it is beyond its capacity.
The DOC cites Worthington v. Fauver, 88 N.J. 183 (1982), for its proposition that "[t]he decision ... pertaining to removal of state-sentenced juveniles from county detention centers may only be invalidated by the Court if the Division [Division of Juvenile Services of DOC] has acted arbitrarily and capriciously." In response to the County's argument that the State facilities are not over-capacity, and are more easily expandable than the county facilities, the DOC notes that the approach of a comparison of capacities was rejected by the Supreme Court in Worthington. 88 N.J. at 205.
Action by a State agency in contravention of State statutes and its own regulations is per se arbitrary and capricious because it violates express or implied legislative policy. See Morales v. Cty. of Hudson, 236 N.J. Super. 406, 421 (App. Div. 1989). Juvenile detention facilities by statute must be strictly regulated by the DOC, and no juvenile may be placed in detention other than that specified by the DOC or Department of Human Services. See N.J.S.A. 2A:4A-37; N.J.A.C. 10A:32-4.1 *526 et seq. "Detention" is defined as "the temporary care of juveniles in physically restricting facilities pending court disposition." N.J.S.A. 2A:4A-22c (emphasis supplied). N.J.S.A. 2A:4A-37c specifically provides: "No juvenile shall be placed in a detention facility which has reached its maximum population capacity, as designated by the Department of Corrections."
Until the amendment of N.J.S.A. 2A:4A-43, effective December 31, 1983, there was no statutory or regulatory provision under which a sentenced juvenile could be incarcerated in a county detention center after final disposition. Thus, a juvenile committed to incarceration pursuant to N.J.S.A. 2A:4A-44 was required to be remanded "to a suitable institution maintained by the Department of Corrections for the rehabilitation of delinquents...." N.J.S.A. 2A:4A-44d(1). Pursuant to the 1983 amendment to N.J.S.A. 2A:4A-43c(1), a court is specifically empowered to incarcerate a juvenile in a county youth detention facility for a term not to exceed 60 consecutive days after the juvenile had been adjudged delinquent.
Pursuant to the amendment, the DOC has adopted specific rules and standards for incarceration of juveniles in county-operated juvenile detention facilities. N.J.A.C. 10A:33-1.1 et seq. N.J.S.A. 2A:4A-43c(2) and N.J.A.C. 10A:33-2.2(b) provide that "[n]o juvenile may be incarcerated in any county detention facility unless the county has entered into an agreement with the Department of Corrections concerning the use of a facility for sentenced juveniles." It is further provided, both in the aforesaid statute and regulation, that sentenced juveniles may not exceed 50% of the maximum capacity of the facility. N.J.A.C. 10A:33-5.1(a)(2).
Not only is there no statutory authority for the DOC to house youths that are sentenced to State facilities in county detention centers, there are no regulations which we have been made aware of or have been able to find through our own research, which in any way establish standards as to the length of the permissible period of incarceration at county facilities, the *527 number that may be housed, or what type of contract or agreement is required as a condition for that housing. We find no evidence that the Legislature envisioned that the State would maintain juveniles who are sentenced to State institutions in a county facility after final disposition.
It is obvious that those juveniles who have been ordered incarcerated in State facilities will present a greater security risk to the facility, its residents and staff than those whom the court determines may appropriately be housed in the county facility for a period not to exceed 60 days pursuant to N.J.S.A. 2A:4A-43c. Yet, under DOC procedures, no rules or guidelines apply to county youth detention centers for the juvenile sentenced to a State facility, whereas strict guidelines apply to the less dangerous youth sentenced to a 60-day or less term. We believe it is clear from the legislative scheme enacted under N.J.S.A. 2A:4A-43c that if the Legislature had intended to permit the housing of juveniles sentenced to State facilities in county detention centers after final disposition that it would have specifically so provided and enacted the necessary safeguards. See Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129 (1987) (in discerning legislative intent it is appropriate to consider legislative scheme); Phila. Outdoor v. N.J. Exp. Auth., 221 N.J. Super. 207, 214-15 (App.Div. 1987) (in keeping with judicial duty court must override agency interpretation of statutes when contrary to plain meaning and intent).
The superintendent of the Monmouth County Youth Detention Center, by letter of April 7, 1989, advised the State Juvenile Detention and Monitoring Unit at Trenton that conditions of overcrowding were what we can only describe as intolerable. It was noted that over 15 residents were sleeping in the gym; that statutorily-required programming goals could not be carried out; that the safety of residents and staff was threatened, and that costs were excessive because of the burden created by the State in causing a backlog of sentenced youths. Increased overcrowding continued down to the time of the County's application to this court. Similar conditions prevailed in county *528 detention centers in other major counties in the State. Statutory and regulatory prohibitions against overcrowding have been continuously violated. The State has effectively shifted its burden to the counties without legislative or executive authority. Cf. Worthington, 88 N.J. at 188; Cryan v. Klein, 148 N.J. Super. 27, 31 (App.Div. 1977), certif. granted, 75 N.J. 606, app. dism., 87 N.J. 304 (1978); Morales, 236 N.J. Super. at 419.
We conclude that the DOC has failed to carry out its statutory obligation to promptly place in State facilities those juveniles who have been sentenced to State institutions. The present practice of housing such juveniles in county detention centers is without authority and is arbitrary and capricious.
We remand to the Commissioner of the DOC with the direction that he establish regulations under which the DOC will promptly comply with court-ordered commitments of juveniles to State facilities by removing the sentenced juvenile from the county detention facility to a State facility as expeditiously as possible upon notification of the court's disposition. We anticipate that the adoption of the necessary rules, and their implementation by the providing of appropriate State facilities for juveniles sentenced to State institutions, can be accomplished in an orderly fashion within a period of six months.
We retain jurisdiction and direct that the Commissioner, no later than 90 days from this date, file a report with this court setting forth the progress and timetable that will be adopted to comply with our order.