693 A.2d 146

THE COUNTY OF HUDSON, PLAINTIFF–APPELLANT, v. DEPART-
MENT OF CORRECTIONS, STATE OF NEW JERSEY, WIL-
LIAM H. FAUVER, COMMISSIONER DEPARTMENT OF LAW
AND PUBLIC SAFETY, JUVENILE JUSTICE COMMISSION,
STATE OF NEW JERSEY, DEBORAH T. PORITZ, ATTORNEY
GENERAL, DEFENDANTS–RESPONDENTS.

THE COUNTY OF CAMDEN, A BODY POLITIC OF THE STATE OF
NEW JERSEY, PLAINTIFF–APPELLANT, v. PETER G. VER-
NIERO, ATTORNEY GENERAL OF THE STATE OF NEW JER-
SEY, IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR OF
THE JUVENILE JUSTICE COMMISSION OF THE STATE OF
NEW JERSEY, AND CHAIR OF THE EXECUTIVE BOARD OF
THE JUVENILE JUSTICE COMMISSION; PAUL DONNELLY,
EXECUTIVE DIRECTOR OF THE JUVENILE JUSTICE COM-
MISSION OF THE STATE OF NEW JERSEY, IN HIS OFFICIAL
CAPACITY; THE JUVENILE JUSTICE COMMISSION; AND
THE STATE OF NEW JERSEY; WILLIAM FAUVER, COMMIS-
SIONER OF DEPARTMENT OF LAW AND PUBLIC SAFETY
AND DEPARTMENT OF CORRECTIONS, DEFENDANTS–RE-
SPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted April 16, 1997—Decided May 2, 1997.

Before Judges SHEBELL, BAIME and P.G. LEVY.

*Francis DeLeonardis*, Hudson County Counsel, attorney for appellant County of Hudson (*Michael A. Cifelli*, Assistant County Counsel, on the brief).

*Peter Verniero*, Attorney General of New Jersey, attorney for respondents Department of Corrections et al. (*Joseph L. Yannotti* and *Jeffrey J. Miller*, Assistant Attorneys General, of counsel; *Daisy B. Barreto*, Deputy Attorney General, on the brief).

*Robert G. Millenky*, County Counsel, attorney for appellant County of Camden (*Donna M. Whiteside*, Assistant County Counsel, on the brief).

*Peter Verniero*, Attorney General of New Jersey, attorney for respondents Peter G. Verniero, et al. (*Joseph L. Yannotti*, Assis-

tant Attorney General, of counsel; *Daisy B. Barreto,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

These appeals come to us by different procedural avenues, although both involve the continuous failure of the Juvenile Justice Commission ("JJC"), with the assent of the Attorney General, to comply with the demands of Hudson and Camden Counties to remove certain State-sentenced juvenile offenders from their respective County Youth Detention Centers. Identical issues of the continued viability of our decision in *Monmouth v. Dep't of Corrections,* 236 *N.J.Super.* 523, 566 *A.*2d 543 (App.Div.1989) and *N.J.A.C.* 10:19–4.2, adopted by the Department of Corrections ("DOC") in compliance with that decision, are common to both matters. We have, therefore, consolidated the appeals for purposes of our opinion.

■ The State-defendants urge that the Legislature's transfer of responsibility for State-committed juveniles from the DOC to the JJC vitiates our holding in *Monmouth* as well as the regulation implementing it. We disagree and order immediate compliance statewide.

The reasoning of our decision in *Monmouth, supra,* obviates the need for any extended discussion regarding the present circumstances surrounding the State's refusal to remove State-sentenced offenders from county detention facilities "as expeditiously as possible upon notification of the court's disposition." 236 *N.J.Super.* at 528, 566 *A.*2d 543. *N.J.A.C.* 10:19–4.2 was adopted by the DOC as the appropriate time interval, three days after notification, to arrange for the necessary transportation of the sentenced youths. The problems regarding a lack of State housing are not proper subjects for discussion or consideration on this issue, as the State may not unilaterally shift that burden onto the Counties. *See N.J.S.A.* 2A:4A–44.1.

We recognize that when reviewing the actions of an administrative agency, this court should "not upset a[n agency] determination ... in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the ... act." *Campbell v. Dep't of Civil Service*, 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963). However, agency action rises to the level of being arbitrary and capricious when a law or regulation is being disregarded by that agency. *Monmouth, supra,* 236 *N.J.Super.* at 525, 566 *A.*2d 543.

The State asserts that *Monmouth* and *N.J.A.C.* 10:19–4.2 must be construed with subsequently enacted legislation and that our earlier decision no longer provides support for the Counties' position that compliance is required. However, the legal basis of our decision in *Monmouth* has not changed. Moreover, although *N.J.A.C.* 10:19–4.2 was amended twice in 1995, *see* 27 *N.J.R.* 1101(a) and 2221(a), the time frame in which the State was required to remove State-sentenced offenders was not changed.

The argument of the Attorney General and the JJC is unsupported by any evidence of a Legislative intent to alter the placement of responsibility for State-committed juveniles on the State, and not the Counties, absent the assent of a particular county with available capacity. *See* 2A:4A–44.1. In the two cases before us, there is no agreement between the State and Counties. Nor does there appear to be the ability to enter into a pact with either County to house juveniles who are under the custody of the State, as both Counties are well over their "maximum rated capacity." *Ibid.* The fact that the duties of the DOC have been transferred to the JJC is of no moment on the issue.

Here, we are painted a picture of county detention facilities with as many as four youths assigned to a room designed for one, school time for the youths being reduced to one hour per day or every other day, and youths being confined to their overcrowded rooms for as much as twelve hours per day. This is reflected in increased incidents of violence both during recreation times and

when the residents are confined to their rooms. The Counties attribute these problems to the State-sentenced offenders who had not been removed in accordance with *N.J.A.C.* 10:19–4.2. In *Monmouth, supra,* we found that State-sentenced juveniles present a greater risk to "the facility, its residents and staff. . . ." 236 *N.J.Super.* at 527, 566 *A.*2d 543. In any event, the problems with overcrowding specifically caused by the detention of State-sentenced offenders in these County Youth Detention Centers are well-documented.

There is no question that State-sentenced offenders are being caused to remain post-disposition at the County Youth Detention Centers for longer than the maximum three day period prescribed by *N.J.A.C.* 10:19–4.2. The State has unilaterally and defiantly decided to leave these State-sentenced offenders in the County Youth Detention Centers until space can be found in the State institutions to which they should have been transferred. *N.J.A.C.* 10:19–4.2 was adopted as the reasonable period of time to arrange only for transportation, not housing, of these juveniles. That is the only delay permitted under the applicable law. In this context, under no tenets of judicial construction can it be said that the enactments of *N.J.S.A.* 52:17B–169 to –178 (Juvenile Justice Commission), *N.J.S.A.* 52:17B–179 to –180 (the State/Community Partnership Grant Program) and *N.J.S.A.* 52:17B–181 to –190 (Stabilization and Reintegration Act) have rendered *N.J.A.C.* 10:19–4.2 a nullity.

Indeed, any attempt to change the regulation for the purpose of shifting the housing burden to the counties would be invalid, absent action by the Legislature. Following our decision in *Monmouth,* the Legislature did act by passing *N.J.S.A.* 2A:4A–44.1, permitting agreements between the State and Counties and providing safeguards to prevent overcrowding. The present position of the Attorney General and the JJC attempts to thwart those safeguards at the risk of grave danger to juveniles. If detained youths are to be placed in such dangerous conditions as are caused by overcrowding and intermingling with State-sentenced prison-

ers, it must be with the express consent of the Legislature after public debate of the issue.

*N.J.A.C.* 10:19–4.2 is a valid regulation, promulgated pursuant to court order. There is no legitimate reason for the State to continue its noncompliance with that regulation or to otherwise seek to circumvent the provisions of *N.J.S.A.* 2A:4A–44.1. Therefore, the State is hereby ordered to forthwith remove State-sentenced offenders within the three-day time period of *N.J.A.C.* 10:19–4.2, subject to any agreements entered into pursuant to *N.J.S.A.* 2A:4A–44.1.

Reversed.