928 A.2d 956 (2007)
395 N.J. Super. 394
In re Adoption of N.J.A.C. 12:17-9.6 by The STATE of New Jersey DEPARTMENT OF LABOR.
Superior Court of New Jersey, Appellate Division.
Argued April 17, 2007.
Decided August 1, 2007.
*957 Francis J. Vernoia, Livingston, argued the cause for appellants Verizon New Jersey Inc., Verizon Services Group, Verizon New York Inc., Empire City Subway Co. Ltd., Verizon Services Corp., BA Investments Development Inc., Chesapeake Directory Sales Co., Codetel Int'l Comm Inc., Global Solutions Inc., Verizon Connected Solutions Inc., Verizon Directory Services, Inc., Verizon Network Integration Corp, and Verizon Corporate Svcs Corp. (Genova, Burns & Vernoia, attorneys; Mr. Vernoia, of counsel and on the brief; Kathleen Barnett Einhorn, on the brief).
John C. Turi, Deputy Attorney General, argued the cause for respondent State of New Jersey (Stuart Rabner, Attorney General, attorney; Mr. Turi, on the brief).
Before Judges COBURN, AXELRAD and R.B. COLEMAN.
The opinion of the court was delivered by
AXELRAD, J.T.C. (temporarily assigned).
This appeal challenges the facial validity of N.J.A.C. 12:17-9.6, which provides that employees who leave their employment to participate in "a written voluntary layoff and/or early retirement incentive *958 policy or program . . . so that another employee may continue to work" are qualified to receive unemployment compensation benefits. We hold the regulation is invalid as a matter of law as it contravenes the legislative policies underlying the Unemployment Compensation Act, N.J.S.A. 43:21-1 to -71, and is inconsistent with the Supreme Court's interpretation of N.J.S.A. 43:21-5(a).
On July 7, 2003, the New Jersey Department of Labor ("DOL")[1] adopted the challenged regulation, N.J.A.C. 12:17-9.6, which provides:
(a) Notwithstanding any other provision of this subchapter, when an employer has a written voluntary layoff and/or early retirement incentive policy or program in effect during a reduction-in-force that permits or induces an employee to leave work so that another employee may continue to work, the following applies:
1. The individual who participates in the program will not be subject to disqualification for voluntarily leaving work in accordance with N.J.S.A. 43:21-5(a); and
2. The individual must otherwise meet all of the other eligibility requirements of the Unemployment Compensation Law to be eligible to receive unemployment insurance benefits.
Verizon[2] filed a timely notice of appeal challenging the validity of the regulation as violative of the Unemployment Compensation Act ("Act"). R. 2:2-3(a)(2).[3] In its appeal, Verizon argues that N.J.A.C. 12:17-9.6 is invalid and ultra vires of the DOL's authority because: (1) it is inconsistent with the express language of N.J.S.A. 43:21-5(a); (2) it contravenes the legislative policies underlying the Act and is inconsistent with N.J.S.A. 43:21-5(a) as interpreted by the New Jersey Supreme Court in Brady v. Board of Review, 152 N.J. 197, 704 A.2d 547 (1997); (3) it is inconsistent with and contravenes N.J.A.C. 12:17-9.1; and (4) it disregards the express requirements set forth in N.J.S.A. 43:21-5(c).
According to Verizon, on its face the regulation contravenes the unequivocal Legislative policy that employees are disqualified from receiving unemployment compensation benefits unless they are "involuntarily" terminated from employment. This is so because the regulation operates to qualify employees for unemployment compensation benefits who voluntarily choose to resign their positions of employment to accept lucrative early retirement or separation packages, not because they are threatened with an imminent loss of their own employment, but simply because they choose to resign "so that another employee may continue to work." N.J.A.C. 12:17-9.6(a). Furthermore, according to Verizon, in a manner inconsistent with the Act, specifically N.J.S.A. 43:21-5(c), this regulation impermissibly allows employees to qualify for unemployment compensation benefits where their jobs remain open and available, but they refuse continued employment.[4]
*959 The DOL responds that the regulation is consistent with the agency's statutory authority to administer the unemployment compensation law and that Verizon has failed to satisfy its burden of overcoming the strong presumption of validity enjoyed by administrative regulations. According to the DOL, N.J.A.C. 12:17-9.6 is consonant with the language of the Act and its purpose of providing benefits to persons who satisfy certain work and earnings requirements and who subsequently become involuntarily unemployed. The DOL argues the challenged regulation provides a practical response to the involuntary loss of "a job" caused by workforce reduction in today's era of corporate downsizing, and thus is consistent with the legislative policies underlying the unemployment compensation law as interpreted by the courts. The agency insists it is not fatal to the validity of the regulation that the person subject to the potential loss of employment would have been a co-worker and not the resigning claimant.

I
N.J.S.A. 43:21-5(a) states that an individual shall be disqualified from the receipt of unemployment compensation benefits "[f]or the week in which the individual has left work voluntarily without good cause attributable to such work. . . ." In Brady, the Court addressed whether employees, who elected to participate in an early retirement plan, were disqualified for benefits under this provision, and held that such resignation would be deemed with "good cause attributable to such work" only in a very limited and defined circumstance. The claimants were former employees of a GM plant located in Trenton who accepted early retirement plans offered by GM when management announced its intention to close the plant by the end of 1993. Brady, supra, 152 N.J. at 203-04, 704 A.2d 547. They subsequently sought and were granted unemployment benefits that were reversed by the Board of Review, which found the claimants to be disqualified under N.J.S.A. 43:21-5(a) because they "left work voluntarily without good cause attributable to such work." Id. at 204, 704 A.2d 547.
The Supreme Court upheld the disqualification. Applying a two-part test for determining "good cause" under the statute, the Court held that individuals are disqualified for unemployment benefits if they voluntarily accept a retirement incentive package unless they "establish by `definite objective facts,' (1) a well-grounded fear of `imminent layoff' and (2) that they `would suffer a substantial loss by not accepting early retirement.'" Id. at 222, 704 A.2d 547; see Fernandez v. Bd. of Review, 304 N.J.Super. 603, 605, 701 A.2d 747 (App. Div.1997); Trupo v. Bd. of Review, 268 N.J.Super. 54, 61, 632 A.2d 852 (App.Div. 1993).
In its analysis, the Court reviewed the legislative intent underlying the Act and the case law interpreting the "good cause" requirement of N.J.S.A. 43:21-5(a). The Court noted the phrase "good cause" is not statutorily defined but has been construed by our courts to mean "`cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed.'" Brady, supra, 152 N.J. at 214, 704 A.2d 547 (quoting Domenico v. Bd. of Review, 192 N.J.Super. 284, 287, 469 A.2d 961 (App.Div.1983)). The Court elaborated:
The test of "ordinary common sense and prudence" must be utilized to determine whether an employee's decision to leave work constitutes good cause. Such cause "must be compelled by real, substantial *960 and reasonable circumstances not imaginary, trifling and whimsical ones."
[Ibid. (internal citations omitted).]
The Brady Court emphasized the legislative history and the Legislature's declaration of public policy, acknowledging that even though the Act is to be construed liberally in favor of claimants to achieve its remedial purposes, "`it is also important to preserve the [unemployment insurance trust] fund against claims by those not intended to share in its benefits. The basic policy of the law is advanced as well when benefits are denied in improper cases as when they are allowed in proper cases.'" Id. at 212, 704 A.2d 547 (quoting Yardville Supply Co. v. Bd. of Review, 114 N.J. 371, 374, 554 A.2d 1337 (1989)). In other words, the Act was "designed to serve not simply the interest of the unemployed, but also the interest of the general public." Ibid. Since "[u]nemployment compensation is an insurance, not an entitlement, program designed to provide a cushion for workers who are involuntarily unemployed through no fault or act of their own," employees are required to do "`whatever is necessary and reasonable' in order to remain employed." Id. at 222, 704 A.2d 547 (quoting Heulitt v. Bd. of Review, 300 N.J.Super. 407, 414, 693 A.2d 155 (App.Div.1997)).
The Court held the claimants were properly disqualified from unemployment benefits because they failed to establish they had a subjective fear of imminent layoff based on definitive objective facts and they would have suffered significant economic harm if they had chosen not to retire. Id. at 218-19, 704 A.2d 547. The management notices did not specifically target particular employees or establish a definite closing date and the claimants could have continued to work for several months, considering their contractual seniority and associated transfer rights, and management's tentative closing schedule. Ibid. Moreover, if the employees had elected to remain at the plant and it had closed as planned, they would have received pension or other supplementary income benefits from their employer in excess of the maximum weekly unemployment compensation rate with no appreciable loss of medical benefits. Id. at 220-21, 704 A.2d 547. The Court found claimants were "not the type of workers the Act is designed to protect" because "rather than being involuntarily laid off and receiving no income, [they made a personal choice and] elected an attractive early retirement package." Id. at 221, 704 A.2d 547.
The DOL enacted N.J.A.C. 12:17-9.1, which became effective on June 1, 1998. The regulation recited the statutory language of N.J.S.A. 43:21-5(a), and defined "good cause attributable to such work" as "a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment." N.J.A.C. 12:17-9.1(b). The regulation lists "[v]oluntary retirement" as an example of a "separation from employment" to be "reviewed as a voluntarily leaving work issue." N.J.A.C. 12:17-9.1(e)8. In adopting this regulation, the DOL acknowledged the Legislative policy inherent in the Act, and implicitly as interpreted by the Supreme Court in Brady[5], by limiting a claimant's qualification *961 for benefits to situations where, due to reasons related "directly" to the claimant's employment, which are "so compelling," the claimant had "no choice but to leave the employment." N.J.A.C. 17:12-9.1(b). Thus, N.J.A.C. 17:12-9.1 establishes that it is the conditions of the employee claimant's "individual" employment, and not those of any other employee, upon which a determination as to eligibility must be made.

II
Verizon contends the challenged regulation, N.J.A.C. 12:17-9.6, improperly circumvents the requirements of N.J.S.A. 43:21-5(a) as interpreted by the Court in Brady, and eviscerates the stringent two-part test that an employee who voluntarily resigns to accept an employer's early separation or retirement plan has to meet to collect unemployment benefits. According to Verizon, rather than requiring the resigning employee to demonstrate he or she is in fear of an "imminent layoff," N.J.A.C. 12:17-9.6 makes such employee's own employment status irrelevant. Contrary to the Court's holding in Brady, an employee who has no fear of layoff, imminent or otherwise, qualifies for unemployment compensation benefits under this regulation if the employee voluntarily and gratuitously resigns pursuant to a "written voluntary layoff and/or early retirement incentive policy or program in effect during a reduction-in-force" simply so "another employee may continue to work." N.J.A.C. 12:17-9.6(a). Furthermore, Verizon argues, the regulation permits a resigning employee to qualify for unemployment benefits without any showing that he or she would suffer an economic loss, let alone a "substantial" one, by remaining in the job and not electing to participate in the employer's early separation plan. As emphasized by Verizon, the regulation allows the incongruous result of qualifying the resigning employee for the receipt of unemployment benefits when both the resigning employee and the employee whose job is saved would be disqualified under Brady.
Verizon further asserts that N.J.A.C. 12:17-9.6 contravenes N.J.A.C. 12:17-9.1, a post-Brady regulation promulgated by the DOL defining the phrase "good cause" that is consistent with the Supreme Court's interpretation of the legislative policy underlying the Act. Contrary to N.J.A.C. 12:17-9.1, under the challenged regulation an employee becomes qualified for benefits for reasons totally unrelated to the employee's "individual" employment, i.e., choosing to resign for reasons related to the employment of another employee. Moreover, N.J.A.C. 12:17-9.6 confers unemployment benefits on an employee who can continue employment but chooses to leave, which directly conflicts with the standard set forth in N.J.A.C. 12:17-9.1 of requiring the employee *962 to prove the departure from work was for a "compelling reason" directly related to the individual's employment. As Verizon notes, "[a]ction by a State agency in contravention of State statutes and its own regulations is per se arbitrary and capricious because it violates express and implied legislative policy." County of Monmouth v. Dep't of Corr., 236 N.J.Super. 523, 525, 566 A.2d 543 (App.Div.1989). Moreover, Verizon urges that N.J.A.C. 12:17-9.6 is an impermissible modification of the express limitations set forth in N.J.A.C. 12:17-9.1, in violation of the Administrative Procedures Act. See N.J.S.A. 52:14B-4(a) (requiring an agency to provide express notice and a hearing in order to amend, modify or repeal an existing regulation).
The DOL responds that N.J.A.C. 12:17-9.6 is consistent with the unemployment compensation law as interpreted by the Supreme Court in Brady. The agency contends the challenged regulation does not establish a per se rule automatically exempting under N.J.S.A. 43:21-5(a) every employee who accepts an employer's offer of a separation package. Rather, consistent with the statute, the regulation applies only in very specific situations where the employer has instituted a workforce reduction program that permits an employee to voluntarily resign so another may continue to work, all of which the DOL asserts are circumstances attributable to "the work." The DOL urges that the Brady requirements are implicit in N.J.A.C. 12:17-9.6. According to the agency, the regulation recognizes that an employee who accepts a "voluntary layoff and/or early retirement" incentive package "during a reduction-in-force" assists in reducing the employer's workforce and thereby avoids, or substantially reduces, the real possibility of an involuntary separation of either himself or a co-worker, which effectuates the policy of the Act. The agency does not read the language "good cause attributable to such work" contained in N.J.S.A. 43:21-5(a) or the Brady decision to limit the potential job loss to the claimant for eligibility for unemployment benefits; rather, it construes the term broadly to mean work attributable to "such employer" and the imminent loss of "a job" due to an employer's reduction-in-force.
Moreover, the DOL contends it is not fatal to the challenged regulation that when the employee accepts the employer's offer, it is "unknown whether the employer's goal in reducing its workforce will be reached," because Brady does not mandate a showing of definite termination. Rather, Brady requires only that the employee had "a well-grounded fear of `imminent layoff'" based on "definite objective facts." Brady, supra, 152 N.J. at 222, 704 A.2d 547.
The DOL then asserts that "[u]nder N.J.A.C. 12:17-9.6," the agency "must weigh the evidence and judge the credibility of the parties in reaching a determination as to whether an employee accepting a separation package had a well-founded fear of an imminent layoff." According to the DOL, "[i]t does this, in part, by determining whether the employee reduced by one the number of employees who would have been laid off if the employer's planned incentive program were successful and the employer carried out a scheme of involuntary layoffs to accomplish the desired reduction in its workforce." The DOL also argues the "substantial economic loss" prong of Brady is implicit in N.J.A.C. 12:17-9.6(a)2, which provides that a claimant who accepts an employer's separation package, in addition to satisfying the criteria set forth in paragraph (a), "must otherwise meet all of the other eligibility requirements of the Unemployment Compensation Law to be eligible to *963 receive unemployment insurance benefits." N.J.A.C. 12:17-9.6(a)2. The agency provides no explanation for either argument.
The DOL insists N.J.A.C. 12:17-9.6 is consistent with its prior regulation, N.J.A.C. 12:17-9.1, for the same reasons the challenged regulation is consistent with N.J.S.A. 43:21-5(a). Nevertheless, the agency submits it is permitted to "waive its own duly-enacted regulations" if authorized by a statute or other regulation. County of Hudson v. Dep't of Corr., 152 N.J. 60, 71, 703 A.2d 268 (1997). The DOL contends it did so in N.J.A.C. 12:17-1.1(d) by authorizing the Commissioner "to relax these rules for good cause on a case-by-case basis."

III
Regulations adopted by administrative agencies are accorded substantial deference provided they are consistent with the governing statutes' terms and objectives. Nelson v. Bd. of Educ. of Twp. of Old Bridge, 148 N.J. 358, 364, 689 A.2d 1342 (1997); Matter of Musick, 143 N.J. 206, 216, 670 A.2d 11 (1996). Moreover, a regulation is presumed to be reasonable and valid. N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 222, 729 A.2d 21 (1999); Matter of Repeal of N.J.A.C. 6:28, 204 N.J.Super. 158, 160, 497 A.2d 1272 (App.Div.1985). "To be valid, a regulation must be within the fair contemplation of the delegation of the enabling statute." Lewis v. Catastrophic Illness in Children Relief Fund Comm'n, 336 N.J.Super. 361, 369-70, 764 A.2d 1035 (App.Div.2001).
An administrative agency may not "extend the statute to give it a greater effect than its language permits." GE Solid State, Inc. v. Dir., Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993). Thus, "when the provisions of the statute are clear and unambiguous, a regulation cannot amend, alter, enlarge or limit the terms of the legislative enactment." N.J. Chamber of Commerce v. N.J. Election Law Enforcement Comm'n, 82 N.J. 57, 82, 411 A.2d 168 (1980); see also In re Adoption of Amendments to N.J.A.C. 6:28-2.10, 3.6 and 4.3, 305 N.J.Super. 389, 401-02, 702 A.2d 838 (App.Div.1997) (reiterating that a regulation will be set aside if it "plainly transgresses the statute it purports to effectuate or if it alters the terms of the statute or frustrates the policy embodied in it" (internal citations omitted)).
Indeed, where there is a conflict, the statute prevails over the regulation. Siri v. Bd. of Trs. of the Teachers' Pension and Annuity Fund, 262 N.J.Super. 147, 152, 620 A.2d 440 (App. Div. 1993). "Statutes, when they deal with a specific issue or matter, are the controlling authority as to the proper disposition of that issue or matter. Thus, any regulation or rule which contravenes a statute is of no force, and the statute will control." L. Feriozzi Concrete Co., Inc. v. Casino Reinvestment Dev. Auth., 342 N.J.Super. 237, 251, 776 A.2d 254 (App.Div.2001) (quoting Terry v. Harris, 175 N.J.Super. 482, 496, 420 A.2d 353 (Law Div.1980)).
When it is clear that an agency action is inconsistent with the legislative mandate, courts will and must act to intervene. See Williams v. Dep't of Human Servs., 116 N.J. 102, 108, 561 A.2d 244 (1989). "[W]e have invalidated regulations that flout the statutory language and undermine the intent of the Legislature." In re Adoption of N.J.A.C. 7:26B, 128 N.J. 442, 450, 608 A.2d 288 (1992). Our role in reviewing an administrative agency action is limited to four inquiries, specifically, whether: (1) the action offends the State or Federal Constitution; (2) the action violates express or implied legislative policies; (3) the record contains substantial evidence *964 to support the agency's findings; and (4) in applying the legislative policy to the facts, the agency erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors. Brady, supra, 152 N.J. at 211, 704 A.2d 547; George Harms Constr. Co., Inc. v. N.J. Turnpike Auth., 137 N.J. 8, 27, 644 A.2d 76 (1994).

IV
We find Verizon's arguments persuasive and the agency's arguments completely unavailing. It is clear that N.J.A.C. 12:17-9.6 is inconsistent with and "plainly transgresses" the Act, alters the terms of N.J.S.A. 43:21-5(a), and violates the legislative policies underlying the Act as interpreted by the our Supreme Court in Brady. In addition, the regulation is directly contrary to the agency's own regulation defining "good cause" enacted following the Brady decision, N.J.A.C. 12:17-9.1. As the challenged regulation cannot withstand the crucible of legal scrutiny, it must be set aside.
N.J.A.C. 12:17-9.6(a) states that an individual who participates in a program of "an employer [who] has a written voluntary layoff and/or early retirement incentive policy or program in effect during a reduction-in-force that permits or induces an employee to leave work so that another employee may continue to work" will not be disqualified for unemployment benefits under N.J.S.A. 43:21-5(a), and is eligible for such benefits provided the individual "otherwise meet[s] all of the other eligibility requirements of the Unemployment Compensation Law."
This regulation, which removes the N.J.S.A. 43:21-5(a) disqualification for unemployment benefits for an employee who voluntarily resigns to accept a lucrative early retirement or separation package during an employer's reduction-in-force without the requirement that his or her job is in jeopardy, is inconsistent with the purpose of the Act, which is "`to provide some income for the worker earning nothing, because he is out of work through no fault or act of his own.'" Brady, supra, 152 N.J. at 212, 704 A.2d 547 (quoting Yardville, supra, 114 N.J. at 375, 554 A.2d 1337). It is also contrary to the claimant's "`responsibility to do whatever is necessary and reasonable in order to remain employed.'" Id. at 214, 704 A.2d 547 (quoting Heulitt, supra, 300 N.J.Super. at 414, 693 A.2d 155). The claimants, upon whom eligibility for unemployment compensation benefits is conferred under the challenged regulation, clearly are "not the type of workers the Act is designed to protect" because "rather than being involuntarily laid off and receiving no income," they can choose to resign for personal reasons and elect an attractive early retirement or separation package. Brady, supra, 152 N.J. at 221, 704 A.2d 547.
Furthermore, contrary to the agency's bald assertion, N.J.A.C. 12:17-9.6 does not implicitly incorporate the two-part Brady test. To the contrary, the regulation effectively overrules the Supreme Court's interpretation of the Act by expressly permitting the receipt of unemployment compensation benefits without the claimant's satisfaction of either prong. First and foremost, directly contrary to Brady, an employee who has no fear of his or her own layoff, imminent or otherwise, but who gratuitously elects to participate in an early retirement or layoff plan and who leaves work during a reduction-in-force "so another employee may continue to work," qualifies for unemployment benefits under the regulation. Even assuming the agency's position that the phrase "such work" in N.J.S.A. 43:21-5(a) encompasses a co-worker's job, which we do not believe is a viable argument following Brady, there is *965 nothing in the language of N.J.A.C. 12:17-9.6 that requires, or even suggests, that the DOL must determine "whether an employee accepting a separation package had a well-founded fear of an imminent layoff." The regulation merely requires there be a reduction-in-force but provides no causal requirement of an imminent loss of any job, nor does it set forth any definitive objective factors of an imminent layoff, such as particularly targeting for layoff the resigning employee or the one who may continue to work, management's tentative layoff schedule, seniority list and projected number of layoffs. See Brady, supra, 152 N.J. at 218-19, 704 A.2d 547. Thus N.J.A.C. 12:17-9.6 qualifies for unemployment compensation benefits a resigning employee who voluntarily takes advantage of an employer's retirement or separation plan to potentially save the employment of a co-worker, where neither is in fear of an imminent layoff, and both would be disqualified for benefits under Brady. This is an incongruous result that cannot be reconciled with the Court's decision in Brady.
In addition to not requiring a resigning employee to demonstrate he or she was in fear of imminent layoff, N.J.A.C. 12:17-9.6 also does not require any showing that the resigning employee would suffer any economic loss, let alone a substantial one, if the employee remained in the job and did not choose to accept the benefits of the early separation plan. Brady, supra, 152 N.J. at 215, 704 A.2d 547. In contrast, because all that is required under N.J.A.C. 12:17-9.6(a) is that the decision to resign be for the purpose that "another employee may continue to work," a resigning employee who applies for unemployment benefits would never be able to meet the "substantial economic loss" prong of the Brady test. This is so because the regulation does not require the employee who volunteers to leave to establish that his or her job was in jeopardy during the work reduction, or even subject to a decrease in salary or benefits, or any other reason that would amount to cause sufficient to justify leaving the ranks of the employed, for eligibility for unemployment benefits. Thus, such employee could elect not to accept the separation incentive and resign, but remain on the job under the status quo, thereby avoiding any economic harm.
N.J.A.C. 12:17-9.6(a)2 simply requires that the claimant who voluntarily accepts the employer's early separation incentive package, though not subject to the "good cause" disqualification of N.J.S.A. 43:21-5(a), must otherwise meet the eligibility requirements of the Unemployment Compensation Law. This general language cannot logically be read as implicitly incorporating the two-part Brady test and does not cure any of the previously discussed deficiencies of this regulation. "[W]hen there is a conflict between general and specific provisions of a statute, the specific provision will control." Wilson v. Unsatisfied Claim and Judgment Fund Bd., 109 N.J. 271, 278, 536 A.2d 752 (1988). N.J.A.C. 12:17-9.6(a)1, a separate and discrete provision from (a)2, specifically addresses the N.J.S.A. 43:21-5(a) "good cause" disqualification in a manner directly contrary to the Supreme Court's interpretation of that statute. That is why the regulation is invalid. It is immaterial that the claimant would also have to satisfy the other eligibility requirements of the Act, which are unrelated to the "good cause" criteria to be eligible for benefits.

V
N.J.A.C. 12:17-9.6 renders the "good cause" statutory disqualification set forth in N.J.S.A. 43:21-5(a) a nullity by deeming those claimants not in fear of an "imminent" involuntary termination and who *966 would not suffer a "substantial economic loss" if they did not resign and accept the employer's early separation incentive package qualified for the receipt of unemployment compensation benefits. In doing so, the challenged regulation impermissibly results in the qualification of employees for such benefits under circumstances in which the Supreme Court has determined N.J.S.A. 43:21-5(a) mandates disqualification.
We are satisfied N.J.A.C. 12:17-9.6 is legally deficient as it contravenes the legislative policies of the Unemployment Compensation Act and is inconsistent with the Supreme Court's interpretation of N.J.S.A. 43:21-5(a). We thus invalidate N.J.A.C. 12:17-9.6.
NOTES
[1] The DOL is now the Department of Labor and Workforce Development.
[2] Although there are multiple appellants, we collectively refer to them as "Verizon."
[3] The appeal was dismissed as interlocutory because of administrative proceedings concerning claims for unemployment compensation benefits made by certain former Verizon employees who left their employment pursuant to a voluntary separation program. On April 10, 2006, Verizon re-filed its appeal challenging the facial validity of this regulation following the final administrative decision in the employees' appeal.
[4] Based on our invalidation of N.J.A.C. 12:17-9.6 as inconsistent with the Supreme Court's interpretation of N.J.S.A. 43:21-5(a), we need not address Verizon's argument respecting N.J.S.A. 43:21-5(c).
[5] The regulation was proposed a week before Brady was decided. 29 N.J.R. 5158(a) (Dec. 15, 1997). Nevertheless, upon enactment, the agency's response to the comment that its promulgated standard was "too extreme and restrictive" and should be "whether a reasonable person, under all the circumstances, would have chosen to leave" was: "The proposed standard ensures that the individual's leaving is compelled by real substantial and reasonable circumstances and not imaginary, trifling and whimsical ones." 30 N.J.R. 2027(a), 2029 (June 1, 1998). This is a quote from Domenico, supra, 192 N.J.Super. at 288, 469 A.2d 961, cited in Brady, supra, 152 N.J. at 214, 704 A.2d 547.

The same comment was made when N.J.A.C. 12:17-9.1 was readopted on June 13, 2003, requesting the term "substantial" be substituted for "compelling." 35 N.J.R. 2874(b), 2875 (July 7, 2003). This time the agency expressly cited Brady, stating, in pertinent part: "The State's courts have interpreted [N.J.S.A. 43:21-5(a)] to mean that the reasons for leaving work must be compelling in order to avoid the disqualification. See, for example, Brady v. Board of Review, 152 N.J. 197, 704 A.2d 547 (1997); Fernandez v. Board of Review, 304 N.J.Super. 603, 701 A.2d 747 (App.Div.1997); Domenico v. Board of Review, 192 N.J.Super. 284, 469 A.2d 961 (App.Div. 1983). Thus, the Division must abide therewith and incorporate same within these regulations." 35 N.J.R. at 2875.