# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0629-24

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.P-S.,

     Defendant,

and

S.A.,

     Defendant-Appellant.

_____

IN THE MATTER OF N.S.A.,
a minor.

_____

Submitted November 12, 2025 – Decided December 8, 2025

Before Judges Gooden Brown and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0152-23.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Kathleen A. Gallagher, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Christopher Weber, Assistant Attorney General, of counsel; Alicia Y. Bergman, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor (Meredith A. Pollock, Deputy Public Defender, of counsel; Jennifer M. Sullivan, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

In this Title Nine action, defendant S.A. appeals from a September 19, 2024 Family Part order finding he abused or neglected his then sixteen-year-old son, N.S.A. (Nicky),[1] made final by an order terminating litigation issued that same day. Defendant, who had sole custody of Nicky when the allegations arose on May 6, 2023, argues the trial court erroneously: excluded evidence of his post-traumatic stress disorder (PTSD), violating his right to due process; and

---

[1] Consistent with the parties' briefs, we use initials to preserve the confidentiality of the proceedings, R. 1:38-3(d)(12), and pseudonyms for ease of reference.

A-0629-24

incorrectly determined he inflicted excessive corporal punishment without considering "Nicky's documented behavioral disorders."  Nicky's law guardian joins the Division of Child Protection and Permanency, urging us to uphold the abuse finding.  Discerning no merit in defendant's evidentiary challenges and concluding the family judge's decision was supported by sufficient credible evidence in the record, we affirm.

I.

During the September 10, 2024 fact-finding hearing, the Division presented the testimony of:  its investigator, Jamila Austin,[2] who testified about the referral that prompted the investigation and her ensuing interviews of Nicky and defendant; Shaina Groisberg, M.D.,[3] who was qualified, by consent of all parties, as an expert in pediatrics, and child abuse and neglect; and Nicky, who testified remotely solely to authenticate the photographs he took of his injuries. The Division also moved into evidence certain portions of its record, Dr. Groisberg's report, and photographs of Nicky's injuries.  Nicky's law guardian did not present any evidence.  Defendant testified on his own behalf.

---

[2]  Elsewhere in the record her name is spelled, "Jamillah Alston."

[3]  Elsewhere in the record her name is spelled, "Shayna Grossberg."

A-0629-24

Following closing arguments, Judge Nora J. Grimbergen reserved decision and thereafter issued a cogent oral decision, detailing her factual and credibility findings, and squarely addressing the issues presented in view of the governing legal principles. We summarize the pertinent facts and events from the record.

Nicky, born in 2007, is the biological child of defendant and S.P-S. (Sally).[4] From the age of five, Nicky resided with defendant, who had full custody of the child. Sally lived in Florida.

The allegations of abuse arose on May 9, 2023, when the Division received a referral that Nicky ran away from home two days earlier. Nicky's maternal aunt found the child, who reported defendant had beaten him with an extension cord.[5] The aunt brought Nicky to the hospital.

That same day, the Division received a second referral from Rutgers University Behavioral Health Center (RUBHC), where Nicky attended a weekly

---

[4] Sally resided in Florida at the time of the incident and participated in the proceedings, but is not a party to this appeal. The family's history with the Division dates back to 2007, is detailed in the verified complaint, and need not be reiterated here. We note only Sally's two other biological children, M.F., born 2018, and G.L., born 2010, are not parties to this appeal.

[5] The instrument is referenced in the record as an extension cord and computer cord.

 A-0629-24

autism group and was undergoing psychological testing. When a RUBHC staff member called defendant to confirm Nicky's testing schedule, defendant disclosed Nicky "ran away" two days earlier. Defendant explained to the staff member that while cleaning his home, "he found a backpack" containing "four BB guns and hunting knives in [Nicky's backpack]." Defendant stated when he confronted Nicky, the child said he planned to trade the weapons, but "did not say what he was trading them for." Claiming he was "frustrated," defendant "took a computer cord and 'wacked' the child on the back with it." Defendant said "he th[ought] the child drugged him because he fell asleep while watching [a] movie" and "[w]hen he woke up, the child had taken the bag and left." Defendant said Nicky "erased his I-Phone location on [defendant's] phone." Defendant reported Nicky missing to the police.

Austin spoke with Nicky at the hospital. Nicky stated he ran away because defendant woke him at 4:00 a.m. and "accus[ed] him of stealing a laptop." Nicky said when he asked his father to return the laptop to him, defendant "started yelling at him and beating him with a computer cord" on his "back, chest[,] right arm, left hand[,] and left shoulder." Austin noticed "multiple loop marks" on Nicky's body. Claiming defendant "always use[d] objects like phone cords or

A-0629-24

extension cords when discipl[in]ing him," Nicky reported he felt unsafe at home. Conversely, "he fe[lt] safe with his mom and aunt."

Austin reported Nicky's allegations and injuries to law enforcement and later interviewed defendant at the local police station.[6] Defendant's statement to Austin largely mirrored his account to RUBHC staff. Defendant denied he physically disciplined Nicky regularly, but acknowledged he hit Nicky with a leather belt when the child was about five years old.

Following a Dodd removal[7] on May 9, 2023, the Division filed a verified complaint and an application for an order to show cause under Title Nine, N.J.S.A. 9:6-8.21 to -8.73, and Title Thirty, N.J.S.A. 30:4C-12, alleging abuse or neglect, and seeking care and supervision of Nicky. The Division also named Sally as a defendant.

Defendant failed to appear on the May 11, 2023 return date. Judge Grimbergen granted the Division's application to temporarily transfer sole legal

---

[6] Police charged defendant with aggravated assault, child endangerment, and weapons offenses. The disposition of these charges is not contained in the record provided on appeal.

[7] A Dodd removal is an emergency removal of a child from a parent's custody without a court order pursuant to N.J.S.A. 9:6-8.21 to -8.82, known as the Dodd Act. N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 26 n.11 (2011).

A-0629-24

and physical custody of Nicky from defendant to Sally, and ordered Sally to temporarily remain in New Jersey.

The show cause hearing was held four days later on May 15, 2023. Judge Grimbergen permitted Sally to return to her home in Florida with Nicky. On that same day, Austin again met with defendant, who claimed he did not recall speaking with her on May 9 because he was "out of it." Defendant reported he had spine surgery and was medicated. Claiming "he was triggered" on the date of the incident, defendant stated, "[Nicky] knows he doesn't like knives and guns in his home as he was held at gunpoint in front of his house." Defendant told Austin he "felt threatened by [Nicky] and his behavior."

Following the investigation, the Division "substantiated" the allegation of abuse against defendant. Relevant to defendant's contentions on appeal, the Division found "[a]ggravating [f]actors #5 an attempt to inflict any significant or lasting physical, psychological, or emotional harm on the child[,] and #7 the child['s] safety requires separation[] of the child from the perpetrator." See N.J.A.C. 3A:10-7(a)(5) and (7). The Division did not find any mitigating factors. See N.J.A.C. 3A:10-7.5(b) (1) to (4).[8]

---

[8] In September 2023, defendant waived his right to a fact-finding hearing. During an April 23, 2024 hearing, however, defendant claimed he was on

At the fact-finding hearing, Dr. Groisberg testified about her May 12, 2023 evaluation of Nicky, including the child's account of the incident. During her physical examination, Dr. Groisberg observed marks on Nicky's body, which were consistent with Nicky's disclosure. Dr. Groisberg opined Nicky was subjected to physical abuse because the marks "were consistent with being hit with a cord, as [Nicky] described."

Defendant recounted his version of the incident. Defendant testified about Nicky's mental health and behavioral issues, including the child's diagnoses. Further, pertinent to his reprised contentions on appeal, defendant testified he was involved in "incidents in the past where [he] was assaulted" and "a police officer put a gun to [his] head and to [his] chest." When his attorney asked defendant to describe those incidents, the judge sustained the Division's objection on relevance grounds. However, the judge permitted defendant to testify he struck Nicky because defendant suffered from PTSD and was "triggered" when he observed "a gun in [Nicky]'s backpack."

---

medication when he made his waiver and, as such "was not in the right mindset." Defendant was assigned new counsel. Judge Grimbergen thereafter granted defendant's motion to set aside the stipulation and scheduled a fact-finding hearing.

In her decision that followed, Judge Grimbergen thoroughly addressed the issues raised in view of the governing legal principles. Recounting the testimony adduced at the hearing, the judge detailed her factual and credibility findings. The judge credited the testimony of all witnesses, noting defendant "acknowledged facts that were not in his favor" but "answered questions in a reasonable manner" and "[h]is testimony was relatively consistent with his prior statements."

Turning to the circumstances underpinning the present incident, Judge Grimbergen was persuaded they differed from the facts in New Jersey Division of Child Protection & Permanency v. K.A., 413 N.J. Super. 504 (App. Div. 2010). As the judge correctly recognized, in K.A., the child actively disobeyed her parent, id. at 512, whereas here, Nicky was asleep and "not behaving in such a way as to . . . require that type of punishment."

Acknowledging defendant's testimony that "he was triggered by seeing guns" and "ha[d] a mental health diagnosis," the judge found defendant "should [have been] in treatment to handle the effects of [a PTSD] diagnosis." According to the judge, defendant's "failure to ensure he c[ould] manage his mental health diagnosis also posed a risk to [Nicky], placing him in imminent danger if [defendant] bec[ame] triggered." The judge concluded Nicky's injuries

9

"were not the kind that would occur but for" defendant's "grossly negligent actions," which placed Nicky "in imminent danger."

## II.

Our circumscribed standard of review of the Family Part's fact-finding determination is well established.  See N.J. Div. of Youth & Fam. Servs. v. R.D., 207 N.J. 88, 112 (2011).  Given a family court's special expertise in matters concerning children, appellate courts do not readily second-guess its factual findings.  N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 553 (2014).

Accordingly, on appeal from orders issued in Title Nine cases, we accord considerable deference to the trial court's factual findings and credibility determinations, as long as those findings are supported by "competent, material and relevant evidence."  N.J.S.A. 9:6-8.46(b); see also N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 369 (2017).  We intervene only "if the trial court's conclusions are 'clearly mistaken or wide of the mark.'"  N.J. Div. of Youth & Fam. Servs. v. L.L., 201 N.J. 210, 227 (2010) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)).

We also afford "substantial deference to the trial judge's discretion on evidentiary rulings."  N.J. Div. of Youth & Fam. Servs. v. M.G., 427 N.J. Super. 154, 172 (App. Div. 2012).  We owe no deference to the court's legal

A-0629-24

conclusions, which we review de novo. N.J. Div. of Child Prot. & Permanency v. V.E., 448 N.J. Super. 374, 384 (App. Div. 2017).

Title Nine cases are fact sensitive and, as such, the trial court should "base its findings on the totality of circumstances." N.J. Div. of Youth & Fam. Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011). "The purpose of a fact-finding hearing in an abuse or neglect proceeding is not to assign guilt to a defendant, but to determine whether a child is an abused or neglected child pursuant to N.J.S.A. 9:6-8.44." V.T., 423 N.J. Super. at 328. Thus, "[t]he prevailing concern in abuse and neglect cases is the best interests of the child." N.J. Div. of Child Prot. & Permanency v. S.G., 448 N.J. Super. 135, 146 (App. Div. 2016); see also N.J.S.A. 9:6-8.8(a). Notably, the Title Nine proof standard is less stringent than in guardianship cases for the termination of parental rights, which instead must be proven by clear and convincing evidence. See N.J. Div. of Child Prot. and Permanency v. R.L.M., 236 N.J. 123, 145 (2018); see also N.J.S.A. 30:4C-15.1(a).

Pertinent to this appeal, an "abused or neglected child" under Title Nine means

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent . . . to exercise a minimum degree of care . . . in

providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment . . . .

[N.J.S.A. 9:6-8.21(c)(4)(b).]

As Judge Grimbergen correctly recognized, "'[e]xcessive corporal punishment' is not defined by statute, but is determined on a case-by-case basis." N.J. Div. of Youth & Fam. Servs. v. S.H., 439 N.J. Super 137, 145 (App. Div. 2011). Our Supreme Court has recognized excessive corporal punishment cases are fact sensitive, deeming them "idiosyncratic," and cautioning courts "ought not assume that what may be 'excessive' corporal punishment for a younger child must also constitute unreasonable infliction of harm, or excessive corporal punishment in another setting involving an older child." N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 33 (2011).

"The general proposition is that a parent may inflict moderate correction such as is reasonable under the circumstances of a case." K.A., 413 N.J. Super. at 510 (quoting State v. T.C., 347 N.J. Super. 219, 240 (App. Div. 2002)). But punishment is excessive where it goes "beyond what is proper or reasonable." Id. at 511. "[W]e evaluate a claim of abuse by looking to the harm suffered by the child, rather than the mental state of the accused abuser." Ibid. That is

A-0629-24

because Title Nine's primary goal is the protection of children. G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 176 (1999).

Defendant's renewed reliance on K.A. is misplaced. In K.A., a mother struck her psychologically disruptive eight-year-old daughter five times with a closed fist, causing bruising. 413 N.J. Super. at 512. The incident occurred after the child refused to do her homework or stay in "time-out." Id. at 505-06. We considered "(1) the reasons underlying [the mother]'s actions; (2) the isolation of the incident; and (3) the trying circumstances which [the mother] was undergoing due to [her daughter]'s psychological disorder" to determine whether her actions were "excessive." Id. at 512. We concluded the mother did not commit excessive corporal punishment because she struck her child with her fist after the child actively disobeyed her mother's instructions. Id. at 512-13.

However, we have not hesitated to recognize the administration of excessive corporal punishment where the defendant used an instrument with such force that it created visible marks on the victim. See e.g., S.H., 439 N.J. Super. at 146-47 (affirming a finding of excessive corporal punishment where a mother hit her fifteen-year-old son with a golf club and bit him on the shoulder, causing bruising and marks); Dep't of Child. and Fams. v. C.H., 414 N.J. Super. 472, 476 (App. Div. 2010) (affirming a finding of excessive corporal

punishment where a mother beat her daughter with a paddle in the face, back, and arms); N.J. Div. of Youth & Fam. Servs. v. B.H., 391 N.J. Super. 322, 327-35 (App. Div. 2007) (recognizing, in a termination of parental rights appeal, the family judge found excessive corporal punishment where a mother hit her six-year-old son with a belt in the face and elsewhere, leaving a welt).

In the present matter, unlike the mother in K.A., who struck her child with a closed fist causing only bruising, 413 N.J. Super. at 512, defendant struck Nicky several times with a cord, causing open wounds and bleeding. The use of an object to inflict injury is a serious distinguishing factor when considering if conduct rises to excessive corporal punishment. See S.H., 439 N.J. Super. at 146; C.H., 414 N.J. Super. at 481; B.H., 391 N.J. Super. at 340. Moreover, as Judge Grimbergen found, Nicky was asleep when defendant found the guns and knives in the child's backpack and, as such, Nicky was not actively disobeying defendant at the time of the incident.

We turn briefly to defendant's evidentiary challenges. Citing N.J.R.E. 701, defendant argues his testimony concerning "his trauma-related symptoms" would have provided critical context for his conduct. Defendant further contends his PTSD was a mitigating factor under N.J.A.C. 3A:10-7.5(b), which

14

should have been considered by the Division and the judge before finding Nicky was an abused or neglected child.

N.J.R.E. 701 provides: "If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it: (a) is rationally based on the witness' perception; and (b) will assist in understanding the witness' testimony or determining a fact in issue." N.J.R.E. 702 permits expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Generally, expert testimony is required when the fact-finder lacks "sufficient knowledge or experience" regarding the proffered evidence. Torres v. Schripps, Inc., 342 N.J. 419, 430 (App. Div. 2001).

It is beyond peradventure that "[e]vidence must be relevant for it to be admissible." State v. Scharf, 225 N.J. 547, 568 (2016). Evidence is relevant if it tends "to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. Relevant evidence generally is admissible, N.J.R.E. 402, although it "may be excluded if its probative value is substantially outweighed by the risk of . . . [u]ndue prejudice, confusion of the issues, or misleading the [fact-finder]," N.J.R.E. 403(a).

15

In the present matter, we discern no error in the judge's decision excluding as irrelevant defendant's testimony about his experiences with police and the origins of his PTSD. That testimony did not tend to prove or disprove whether defendant's use of corporal punishment was reasonable. In any event, in her decision, the judge acknowledged defendant's testimony that he suffered from PTSD, but found the lack of evidence demonstrating he was in treatment for that diagnosis "posed a risk to [Nicky]." Further, because defendant's proposed testimony was beyond the understanding of the average fact-finder, it required expert testimony. See N.J.R.E. 702; see also Mullarney v. Bd. of Review, 343 N.J. Super. 401, 408 (App. Div. 2001) (requiring expert testimony to explain the effects of mental illness on the proponent's behavior and judgment).

Nor are we persuaded the judge failed to properly consider Nicky's behavior issues. We have recognized "the test for determining excessive corporal punishment [is not] any different when the child has a disability." S.H., 439 N.J. Super. at 149. "While these children may be more difficult to control, present additional challenges to a family, and be unresponsive to traditional forms of discipline, they are entitled to the same protection under Title Nine as non-disabled children." Id. at 149-50. "[T]he underlying behavior of a child," therefore "can be a relevant factor among the totality of the circumstances in

16

assessing the reasonableness of the parent's response to the child's outburst. " <u>Id.</u> at 150. But the child's behavior is evaluated at the time the corporal punishment is inflicted. <u>Compare</u> <u>K.A.</u>, 413 N.J. Super. at 512 (recognizing the child's repeated disobedience despite her mother's instructions created a trying situation relevant to the reasonableness of the corporal punishment); <u>with</u> <u>S.H.</u>, 439 N.J. Super. at 148-50 (holding the child's use of profanity while seated on a couch did not justify the mother's violent response).

In summary, pursuant to our limited standard of review, <u>see</u> <u>R.G.</u>, 217 N.J. at 553, we affirm the fact-finding order substantially for the reasons expressed by Judge Grimbergen in her well-reasoned decision, which is supported by "competent, material[,] and relevant evidence" in the record, N.J.S.A. 9:6-8.46(b).

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E). We add only defendant's contention that the Division failed to consider his PTSD as a factor in mitigation of its "substantiated" finding, is misplaced. The Division's administrative findings are not relevant to these proceedings. <u>See</u> N.J.A.C. 3A:10-7.3.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0629-24